IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**CONCETTA RIZZIO**,
*Plaintiff/Appellee*,

*v.*

**SURPASS SENIOR LIVING LLC, ET AL.**,
*Defendants/Appellants*.

No. CV-20-0058-PR
Filed August 17, 2021

Appeal from the Superior Court in Maricopa County
The Honorable Sherry K. Stephens, Judge
No.   CV2018-090357
**REVERSED IN PART AND REMANDED**

Opinion of the Court of Appeals, Division One
248 Ariz. 266 (App. 2020)
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

H. Micheal Wright (argued), Lincoln M. Wright, Udall Shumway PLC, Mesa, Attorneys for Concetta Rizzio

Kevin C. Nicholas, Bruce C. Smith (argued), Sarah A. Schade, Lewis Brisbois Bisgaard & Smith LLP, Phoenix, Attorneys for Surpass Senior Living, LLC, Gilbert AL Partners, LP, Gilbert AL GP, LLC, and Brianne Schmitz

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix; and Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson, Attorneys for Amici Curiae Arizona Association for Justice and Arizona Trial Lawyers Association

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, and BEENE joined.[*]

_____

JUSTICE MONTGOMERY, opinion of the Court:

¶1        Arbitration agreements are widely utilized for resolving a variety of disputes and are generally enforceable.   Nonetheless, an arbitration agreement may be unenforceable due to either procedural or substantive unconscionability.   Substantive unconscionability looks to whether the terms of an agreement are one-sided or unduly harsh, including whether the costs to arbitrate a dispute prevent a plaintiff from effectively vindicating her rights.   In this case, we are asked to determine whether a plaintiff's fee agreement with her attorney can be considered in assessing her ability to financially bear the costs of arbitration.

¶2        We hold that a fee agreement between a client and her attorney, especially where the attorney agrees to advance the costs of arbitration, is relevant to determining her ability to arbitrate her claims and, on the record before us, the arbitration agreement in question is not substantively unconscionable.

## I.   Factual and Procedural Background

¶3        In April 2017, Deborah Georgianni arranged for her mother, Concetta Rizzio, to live at Mariposa Point ("Mariposa"), a nursing care facility managed by Surpass Senior Living ("Surpass").   Georgianni, acting on behalf of Rizzio pursuant to a power of attorney, signed two contracts with Mariposa.   Each contract included an arbitration clause with a cost-shifting provision (the "Agreement") that stated Rizzio would be responsible for all "[c]osts of arbitration, including [defense]'s legal costs and attorney's fees, arbitration fees and similar costs," if she made a claim against Surpass.   The Agreement also included a severability provision: "If any provision of this Arbitration Agreement is held to be invalid or unenforceable, the remainder of the agreement shall remain in full force and effect."

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

**¶4**          In February 2018, a fellow Mariposa resident attacked Rizzio. Georgianni filed a lawsuit on behalf of her mother against Surpass, the attacker, and others involved.   She alleged negligence and abuse of a vulnerable adult and sought compensatory and punitive damages. Surpass filed a motion to compel arbitration under the Agreement.   In response, Georgianni argued that the Agreement was procedurally and substantively unconscionable and, thus, unenforceable.   The trial court held an evidentiary hearing and heard testimony from Georgianni, Mariposa's marketing director, and an arbitration expert.

**¶5**          After the hearing, the trial court denied the motion to compel arbitration.   The court found the entire Agreement "unduly oppressive, unenforceable, and unconscionable."   The court also concluded that Rizzio would be unable to effectively vindicate her claim due to high arbitration costs, that the contract unfairly allocated all costs of arbitration to Rizzio, and that it violated her reasonable expectations.

**¶6**          The court of appeals reversed the trial court on the issue of procedural unconscionability but agreed with the court's conclusion that the cost-shifting provision was substantively unconscionable because it allocated *all* costs to Rizzio, *even if she prevailed*.   Specifically, the court noted that the provision was "unusual, one-sided, and operates as a prospective penalty for any resident seeking to bring a meritorious claim." Nonetheless, because the severability clause in the Agreement permitted severance of the oppressive cost-shifting provision, the court went on to consider whether the remainder of the Agreement could still be enforced. Relying on the retainer agreement Rizzio had with her attorney wherein he agreed to advance all costs, the court concluded that "[t]he presence of such an   arrangement   here   negates   any   argument   of   substantive unconscionability based on arbitration costs: Rizzio is not responsible for up-front costs and such costs cannot, therefore, be held an impediment to arbitration."

**¶7**          We granted review to determine whether the fee agreement between a plaintiff and her attorney is relevant when considering a plaintiff's ability to bear the costs of arbitration.   This is an issue of first impression and statewide importance.   We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

3

## II. Discussion

¶8 We review a denial of a motion to compel arbitration de novo. *Allstate Prop. & Cas. Ins. Co. v. Watts Water Tech., Inc.*, 244 Ariz. 253, 256 ¶ 9 (App. 2018). We likewise review a determination of unconscionability de novo. *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252 ¶ 40 (App. 2005).

### A.

¶9 The court of appeals concluded that the Federal Arbitration Act ("FAA") applies to the Agreement between Rizzio and Surpass. *Rizzio v. Surpass Senior Living LLC*, 248 Ariz. 266, 270 ¶ 14 (App. 2020). Neither party argues otherwise, as the Agreement specifically provides that it "shall be governed by and interpreted under the [FAA]." As noted by the Supreme Court, "[g]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (same); *see also* A.R.S. § 12–3006(A) ("An agreement . . . to arbitrat[e] any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of a contract."). Under Arizona law, either substantive or procedural unconscionability may be raised as a defense to enforcement. *Gullett ex rel. Estate of Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 241 Ariz. 532, 535 ¶ 6 (App. 2017).

¶10 Substantive unconscionability concerns the actual terms of the contract and whether they are "overly oppressive or unduly harsh to one of the parties." *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 512 ¶ 8 (App. 2013). Accordingly, an arbitration agreement may be unenforceable when a party cannot effectively vindicate her rights in the arbitral forum due to the prohibitive costs of arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). Arizona courts have thus held that "arbitration costs are directly related to a litigant's ability to pursue . . . a claim." *See, e.g.*, *Harrington*, 211 Ariz. at 252 ¶ 42.

### B.

¶11 We adopt *Clark*'s framework for evaluating whether the financial costs of arbitration prohibit a plaintiff from vindicating her rights. *Clark*, 232 Ariz. at 513 ¶¶ 10–12. Under that framework, a party seeking to invalidate an arbitration agreement must establish arbitration costs with reasonable certainty; costs cannot be speculative. *Id.* at 513 ¶ 10. Next,

the party must make a specific, individualized showing that she would be financially unable to bear the costs of arbitration. *Id.* at 513 ¶ 11. Lastly, the court considers whether the agreement permits a party to waive or reduce arbitration costs because of financial hardship.[1] *Id.* at 513 ¶ 2. Ultimately, the determination of substantive unconscionability "is a question of fact that depends on the unique circumstances of each case." *Id.* at 513 ¶ 9. Absent a showing that arbitration costs would deny the plaintiff meaningful access to a forum in which she could vindicate her rights, a court will not find an arbitration agreement substantively unconscionable.

## C.

**¶12** We next consider the relevance of a fee agreement in determining a plaintiff's ability to meet the costs of arbitration. Rizzio argues that the focus in making this determination is on the plaintiff's ability to pay, not her attorney's. Surpass contends that *all* relevant facts and circumstances must be considered, which includes a fee agreement between an attorney and client, because the plaintiff is not denied access to the arbitral forum if all costs associated with access are advanced by the attorney.

### 1.

**¶13** Rizzio asserts that her argument reflects a "majority" approach that does not consider fee agreements. We disagree with her characterization. Rather than presenting any situation where a court noted the existence of a fee agreement and then explicitly disregarded it to focus solely on the plaintiff's financial situation, the cases cited by Rizzio simply do not address fee agreements at all.

**¶14** No published Arizona decision has considered what relevance, if any, a fee agreement has in this context. In *Harrington*, the court of appeals referenced a contingency agreement and the possibility of an attorney advancing costs in the context of comparing litigation and arbitration costs. 211 Ariz. at 253 ¶ 48. The court initially observed that the plaintiffs, who avowed that they could not afford even $1,000 to arbitrate claims of $500,000 to $1,000,000, failed to explain how they would

---

[1] As the Agreement now stands, there is no provision for waiving or reducing costs, so we do not address this factor in our analysis. *Infra* ¶¶ 23–26.

be able to litigate such claims for less than $1,000. *Id.* The court then offered that "[o]ne obvious possibility is that an attorney would take the case on a contingency basis and advance costs." *Id.* Likewise, the Court concluded "[t]hat same possibility would apply to arbitration." *Id.*

¶15 Courts in other jurisdictions have also mentioned fee agreements when discussing arbitration and litigation costs. For example, the court in *Morrison v. Circuit City Stores, Inc.* observed that, when considering the costs of litigation, "[i]n many . . . cases, employees . . . will be represented by attorneys on a contingency-fee basis. Thus, many litigants will face minimal costs in the judicial forum, as the attorney will cover most of the fees of litigation and advance the expenses incurred in discovery." 317 F.3d 646, 664 (6th Cir. 2003); *see also Lillard v. Tech USA, Inc.*, No. ADC-20-308, 2020 WL 4925661, at *5 (D. Md. Aug. 21, 2020) ("[T]he Court will not assume, that the contingency fee agreement does not apply to arbitration proceedings. Accordingly, Plaintiff seems to be in the same position regarding her out-of-pocket expenses for arbitration in which she would otherwise be for litigation."); *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 872 (E.D. Va. 2009) ("Even assuming that plaintiff has retained attorneys willing to advance costs and to represent her on a contingency basis in her litigation here[,] . . . she has failed to show that she could not secure a similar arrangement with these attorneys in pursuing arbitration."). *Needels v. First Franklin Financial Corp.* further stated that "[l]itigation expenses and any pertinent attorney fee arrangements, that is, plaintiff-attorney contingency fee arrangements may also be considered" when assessing the costs of arbitration. No. 1:05CV268, 2005 WL 8161857, at *4 (S.D. Ohio Dec. 15, 2005). *Needels* went so far as to conclude that the "[c]ourt cannot compare potential arbitration and litigation costs because Plaintiff fails to inform the Court whether she and her attorney entered into a contingency fee arrangement." *Id.*

**2.**

¶16 At oral argument before the court of appeals, Rizzio acknowledged that a hypothetical wealthy relative's willingness to front the costs of arbitration, just as her attorneys were willing to do, was relevant to determining a plaintiff's ability to pay. This acknowledgement fairly recognizes the need to account for each case's unique circumstances when assessing the plaintiff's access to arbitration. Thus, a plaintiff's access to funds, regardless of the source, falls within the specific, individualized inquiry regarding the ability to bear costs. The issue is not necessarily *who*

pays the costs associated with arbitrating a claim; rather, it is whether the costs can be met such that the plaintiff can effectively vindicate her rights.

¶17 Arizona Rule of Evidence 401 guides our determination. Therein, evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence and . . . the fact is of consequence in determining the action." Ariz. R. Evid. 401. Here, Rizzio's agreement with her attorney to advance the costs of arbitration makes it more probable that she can afford to arbitrate her claims. *See Clark*, 232 Ariz. at 513 ¶ 9. We therefore hold that Rizzio's fee agreement is relevant to determining her ability to bear the costs of arbitration.

¶18 Other factors may also bear on the degree to which such an agreement can be considered, or the weight given it, in determining whether the plaintiff can vindicate her rights. For example, if the agreement with the attorney limits repayment to any recovery,[2] then that agreement and the likely amount of any recovery may certainly be relevant and may be dispositive, especially if any likely recovery is barely enough to cover costs and the plaintiff is left in no better position than if she had not litigated at all. Likewise, there may be a case where no attorney is willing to advance the costs to arbitrate because the amount of the claim in question is too small to cover costs. *See Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 373 (N.C. 2008) (holding an arbitration clause unconscionable, in part, because it "deters potential plaintiffs from bringing and attorneys from taking cases with low damage amounts in the face of large costs"). Regardless, our conclusion does not establish a per se rule that the mere existence of a fee agreement advancing costs precludes a determination that an arbitration agreement is substantively unconscionable.

## D.

¶19 Rizzio argues that allowing a court to consider a fee arrangement might have a "chilling effect" on prospective litigants who cannot afford to advance costs. Attorneys may be hesitant to advance costs if that agreement might later provide the basis for compelling arbitration. Then, the plaintiff who cannot afford to advance the costs may

---

[2] Arizona Rule of Supreme Court 42, Ethical Rule 1.8(e)(1), permits a lawyer to advance costs and condition repayment on any recovered amounts.

not be able to bring her claim at all. As discussed above, the mere existence of such an agreement does not permit a court to summarily hold that the plaintiff can effectively vindicate her rights. Rather, a court must still engage in the fact-intensive analysis set forth in *Clark* and give a fee agreement the weight it deserves given its relevance within the context of the unique facts and circumstances of the case.

¶20 Amici Arizona Association for Justice and Arizona Trial Lawyers Association assert that it is improper to consider a fee agreement because it would violate the collateral-source rule, which precludes consideration of benefits received by a plaintiff to reduce the amount of a defendant's liability in personal injury actions. *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 17 ¶ 14 (App. 2014) (rejecting application of the rule in "ordinary contract cases"). [3] Applying that rule when assessing a plaintiff's ability to meet the costs of arbitration is misplaced, though, regardless of the nature of the action. The amount of damages a defendant may be liable for is determined without reference to any costs advanced by a plaintiff's attorney. The collateral-source rule does not apply to this inquiry.

### III. Application

¶21 Applying the *Clark* framework to this case and considering the fee agreement, we conclude that the record before us does not support a finding of substantive unconscionability.

¶22 With respect to the cost to arbitrate her claims, which her attorneys have agreed to advance, Rizzio's expert only addressed the potential fees charged by an arbitrator. At the evidentiary hearing, he testified that the fees could range from $16,000 to $22,400. He did not estimate expert fees, filing fees, or court reporter fees. And, because the only provision in the Agreement addressing costs and fees has been severed, the arbitrator may only award what is permitted by law. *See RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 136 ¶ 14 (App. 2016); A.R.S. § 12-3021(B) (permitting an arbitrator to award reasonable expenses "only if that award is authorized by law in a civil action involving the same claim."). Thus, Arizona law would allow a prevailing party to recover "all

---

[3] Application of the collateral source rule has also been rejected in actions for medical malpractice against a licensed healthcare provider. A.R.S. § 12-565; *Eastin v. Broomfield*, 116 Ariz. 576 (1977).

costs expended or incurred therein unless otherwise provided by law." A.R.S. § 12-341. Additionally, because she brought her claim under the Adult Services Protective Act ("APSA"), Rizzio could be awarded actual, consequential, and punitive damages, plus costs. A.R.S. § 46-455(H)(4); *See Mathews ex rel. Mathews v. Life Care Cntrs of Am., Inc.*, 217 Ariz. 606, 610 ¶ 19 (App. 2008) (holding that "a victim of elder abuse pursuant to APSA would not be deprived of the remedies specified by the legislature simply because that case is resolved using arbitration"). Regardless, this record is bereft of any indication as to what the total cost to arbitrate may be and what fees, whether she prevails or not, Rizzio might incur.

¶23 Next, we consider Rizzio's specific, individualized showing of her financial circumstances regarding her inability to cover the costs of arbitration. For this inquiry, she must present evidence of her income and assets and may not simply assert that she cannot pay. Surprisingly, the evidence of Rizzio's financial position presented at the hearing offered the barest summary, and her representative testified that she was unaware Rizzio's assets would be addressed. The record reflects expenses for care averaging $11,000 each month, assets consisting of a trust with $80,000 in remaining proceeds from the 2010 sale of a home, two annuities of unknown value, a distribution in an unknown amount from her husband's retirement, and a long-term care policy that pays $170 a day for her care. The closest we have to any total of her available assets is the estimate that she has less than two years left to cover her personal care. *Cf. Clark*, 232 Ariz. at 514 ¶ 18 n.4 ("Plaintiff's total monthly income was $4,630, which consisted of the following: $1,717 in social security; $1,200 from a pension; and $1,703 in 'veteran's assistance.' Plaintiff testified that apart from his monthly income, he had no other financial resources.").

¶24 A finding that the Agreement is substantively unconscionable on such a speculative record of arbitration costs and the plaintiff's finances is inconsistent with policies favoring arbitration agreements. *See Green Tree*, 531 U.S. at 91; *Harrington*, 211 Ariz. at 253 ¶ 44. Based on this record, Rizzio has failed to establish substantive unconscionability. The Agreement as it now stands is enforceable.

## IV. Conclusion

¶25 We affirm the court of appeals opinion but vacate paragraphs 25–29. Because the trial court's order denying the motion to compel arbitration is unsupported by the record, we reverse and remand with

directions to enter an order compelling arbitration.   Given our resolution of the issue presented, we decline to award attorney fees.