**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated, | No. 22-15566 |
| | D.C. No. 3:21-cv-07478-WHA |
| *Plaintiff-Appellee*, | |
| v. | OPINION |
| COINBASE, INC., | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued February 14, 2023
Submitted June 23, 2023
San Francisco, California

Filed December 5, 2023

Before: Eric D. Miller, Gabriel P. Sanchez, and Salvador
Mendoza, Jr., Circuit Judges.

Opinion by Judge Mendoza;
Partial Concurrence by Judge Miller

# SUMMARY[*]

## Arbitration / Delegation

The panel reversed the district court's order denying Coinbase, Inc.'s motion to compel arbitration of claims brought by Abraham Bielski, alleging that Coinbase, an online cryptocurrency exchange, failed to investigate the unauthorized transfer of funds from Bielski's Coinbase account.

Coinbase's User Agreement included an arbitration agreement with a delegation provision, which delegated to the arbitrator any dispute arising out of the agreement. Bielski alleged that the delegation provision and the arbitration agreement were unenforceable.

As a threshold issue, the panel held that, in order to challenge a delegation provision to ensure that a court can review its challenge, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it; a court need not first evaluate the substance of the challenge, as required by the Sixth and Eleventh Circuits. Agreeing with the Third and Fourth Circuits, the panel held that a party may use the same arguments to challenge both the delegation provision and the arbitration agreement, so long as the party articulates why the argument invalidates each specific provision. Because Bielski specifically challenged the delegation provision, the district court correctly considered that challenge.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Next, the panel held that in evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret that provision in the context of the arbitration agreement as a whole, which may require examining the underlying agreement as well. The panel determined that the district court correctly considered the whole context surrounding the delegation provision in its analysis of the provision's validity.

Finally, the panel held that the delegation provision in context was not unconscionable. The delegation's provision's low levels of procedural and substantive unconscionability failed to tip the scales to render the provision unconscionable and therefore unenforceable. Accordingly, the panel held that the district court erred in refusing to enforce the delegation provision, and reversed the district court's denial of Coinbase's motion to compel arbitration.

Concurring in part and concurring in the judgment, Judge Miller joined the majority opinion with the exception of part III(A). Although he agreed with much of that part, he did not join it because he did not agree with the majority's description of the law of the Sixth and Eleventh Circuits concerning what is required to challenge a delegation provision.

## COUNSEL

Jessica L. Ellsworth (argued), Neal K. Katyal, William E. Havemann, and Nathaniel A.G. Zelinsky, Hogan Lovells US LLP, Washington, D.C. for Defendant-Appellant.

Glenn E. Chappell (argued), Hassan A. Zavareei, David Jochnowitz, and Spencer S. Hughes, Tycko & Zavareei LLP, Washington, D.C.; Sabita J. Soneji, Wesley M. Griffith, and Spencer S. Hughes, Tycko & Zavareei LLP, Oakland, California; Matthew D. Carlson, Law Office of Matthew D. Carlson, Orchard Park, New York; for Plaintiff-Appellee.

Jennifer B. Dickey and Jonathan D. Urick, U.S. Chamber Litigation Center, Washington, D.C.; Mark A. Perry and Joshua Halpern, Weil Gotshal & Manges LLP, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

Richard H. Frankel, Drexel University, Earle Mack School of Law, Philadelphia, Pennsylvania; Jeffrey R. White, American Association for Justice, Washington, D.C.; for Amici Curiae American Association for Justice, National Consumer Law Center, and Center for Responsible Lending.

**OPINION**

MENDOZA, Circuit Judge:

Defendant-Appellant Coinbase, an online cryptocurrency exchange, appeals the district court's denial of its motion to compel arbitration of claims brought by Plaintiff-Appellee Abraham Bielski. Coinbase challenges the district court's order at every step. Coinbase argues the district court erred in three ways: (1) it erroneously considered Mr. Bielski's challenge to the delegation provision because he failed to specifically challenge it; (2) it impermissibly looked beyond the delegation provision in evaluating the provision's enforceability; and (3) it incorrectly determined that the delegation provision and the arbitration agreement were unconscionable and inseverable.

We decide as a matter of first impression what a party must do to specifically challenge a delegation provision and what a court may consider when evaluating this challenge. Though Mr. Bielski specifically challenged the delegation provision and the district court properly "looked through" the provision in its unconscionability analysis, we ultimately hold that the delegation provision is enforceable and reverse the district court's order.

I.

What is cryptocurrency? Cryptocurrency—like Bitcoin, Ethereum, and dogecoin—is not issued by a government or a central bank; it is created by developers and traded over the internet. Put somewhat simply, cryptocurrency ("crypto") is the general term for encrypted, decentralized digital money based on blockchain technology. References to crypto and crypto-related companies are everywhere: the Los Angeles

Lakers' stadium is named "Crypto.com Arena;" Saturday Night Live has spoofed Bitcoin commercials; and the 2022 Super Bowl was dubbed the "Crypto Bowl" for the sheer number of crypto-related ads, including Coinbase's, which prompted enough traffic to its app to temporarily crash it.

Because many traditional investment firms and banks do not sell crypto, many people looking to buy and sell it go through crypto exchanges. Coinbase is one of these exchanges, advertising itself as the easiest place to buy and sell crypto. Coinbase provides users with a digital wallet, which they fund with personal bank accounts. Users can both store currency and transfer it in and out of their digital wallet. In 2021, Coinbase had 68 million users. Mr. Bielski was one of them. Wanting to try his hand at trading crypto, he opened a Coinbase account, and, like other users, connected his personal bank account to his digital wallet.

## A.

Coinbase, like most companies doing business online, requires users like Mr. Bielski to accept its User Agreement before opening an account. Coinbase's User Agreement outlines three progressive steps a user must take to resolve any dispute with Coinbase. A user must: (1) contact Coinbase's customer support to resolve the dispute amicably ("informal complaint process"); (2) fill out Coinbase's complaint form and wait for Coinbase's response ("formal complaint process"); and (3) arbitrate the dispute ("arbitration agreement"). The arbitration agreement delegates to an arbitrator any dispute arising out of the agreement, "including the enforceability, revocability,

scope, or validity of the [a]rbitration [a]greement." ("the delegation provision"). That delegation provision provides:

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

## B.

Mr. Bielski alleges that, soon after opening his Coinbase account, a scammer transferred more than $31,000 out of his digital wallet. Mr. Bielski's tough luck did not end there. When he turned to Coinbase for help recovering his funds, he faced a bot-filled customer service nightmare. Mr. Bielski "live chatted" with a Coinbase representative, which he soon realized was a "bot" offering canned responses. Unfortunately, the bot did not find his lost $31,000. He then repeatedly called Coinbase's hotline for compromised accounts. He once again was unable to speak with a human. Fed up with automated responses, Mr. Bielski wrote two letters to Coinbase, begging for help recovering his lost funds. Coinbase did not help.

Mr. Bielski sued Coinbase under the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693–1693r, and Regulation E, 12 C.F.R. §§ 1005.1–1005.20, for failing to investigate the unauthorized transfer from his account. Coinbase moved to compel arbitration, arguing that under its User Agreement, Mr. Bielski's claims and any questions of arbitrability

belong with an arbitrator, not the court.  Mr. Bielski opposed
Coinbase's motion.  The district court denied Coinbase's
motion to compel arbitration, finding both the delegation
provision and the arbitration agreement unconscionable and
inseverable.  Coinbase timely appealed.[1]

## II.

We have jurisdiction under 9 U.S.C. § 16(a)(1).  We
"review [a] denial of a motion to compel arbitration *de novo*"
and "findings of fact underlying the district court's decision
for clear error."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992,
999 (9th Cir. 2021).

## III.

Mr. Bielski does not dispute that Coinbase's arbitration
agreement contains a delegation provision.  Instead, he
argues that both the delegation provision and the arbitration
agreement are unenforceable.  Before turning to the
enforceability of the delegation provision, we must decide
two threshold issues not yet resolved by our court.  First, we
address what a party must do to specifically challenge a
delegation provision to ensure that a court can review its
challenge.  Then, we turn to what a court may consider when
evaluating the enforceability of a delegation provision.
Finally, we address the enforceability of Coinbase's
delegation provision.

---

[1] We heard argument in this case on February 14, 2023, and deferred
submission pending the Supreme Court's decision in *Coinbase v. Bielski*,
No. 22-105.  The Supreme Court published its decision on June 23, 2023,
and we submitted the case that day.

### A.

When is enough, enough?  Coinbase argues we must reverse the district court and enforce the delegation provision because Mr. Bielski did not do enough to specifically challenge the delegation provision.  It claims that Mr. Bielski's arguments exclusively address the arbitration agreement, and any arguments about the delegation provision "just repeat[] thinly disguised versions of the very same arguments he levels against the arbitration agreement more broadly."  Mr. Bielski argues he did enough to challenge the delegation provision by lodging specific arguments against it in his opposition motion.  He further argues that *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010), permits relying on similar arguments when specifically challenging the delegation provision and the arbitration agreement as a whole.  We agree with Mr. Bielski.  Because he specifically challenged the delegation provision, Mr. Bielski's enforceability challenge belongs with the court, not an arbitrator.

Some background law about arbitration agreements and delegation provisions helps us understand the dispute between Mr. Bielski and Coinbase.  Under Section 2 of the Federal Arbitration Act ("FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Because an arbitration agreement is a contract like any other, it may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Lim*, 8 F.4th at 999 (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)).

The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: "(1) whether

a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator. *Lim*, 8 F.4th at 999–1000.

So what issues are left for a court to consider in deciding a motion to compel arbitration where the arbitration agreement has a delegation provision? Under *Rent-A-Center*, if a party specifically challenges the delegation provision under Section 2 of the FAA, "the federal court must consider the challenge before ordering compliance" with it. 561 U.S. at 71. In *Rent-A-Center*, the Supreme Court considered whether a plaintiff's opposition to his employer's motion to compel arbitration sufficiently challenged the arbitration agreement's delegation provision, requiring federal court review. There, the plaintiff only argued that "the *arbitration agreement as a whole* [was] substantively unconscionable," and "did [not] *even mention* the delegation provision" in his opposition motion. *Id*. at 72–73 (second emphasis added). This was fatal to the plaintiff's claim. But the Court suggested a way forward: "It may be that had [the plaintiff] challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." *Id.* at 74. *Rent-A-Center* makes clear that a party must at least mention a delegation provision to challenge it. But the Supreme Court has not provided parties with more specific instructions on what it takes to sufficiently challenge a delegation provision to ensure federal court review.

To provide some guidance, we distill *Rent-A-Center* into two principles. First, a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration. Second, a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable. There are many reasons why a party may be required to use nearly identical challenges to the delegation provision and the arbitration agreement as a whole. Notably, nothing in *Rent-A-Center* requires fashioning completely distinct arguments. In fact, it suggests that if the plaintiff had argued the procedures rendered both the delegation provision *and* the arbitration agreement unconscionable, the court should have considered the challenge. *See id*.

The framework we announce today is supported by our precedent and that of many of our sister circuits. In *Brennan v. Opus Bank*, we held that a party resisting arbitration did not challenge the delegation provision to permit federal court review when the party argued only that the arbitration agreement was invalid *as a whole*. 796 F.3d 1125, 1133 (9th Cir. 2015). And in *Lim*, we determined that a delegation provision and an arbitration agreement were both unconscionable *for the same reasons*. 8 F.4th at 1006. In the concluding paragraph in that opinion, we agreed with the district court "that the same bases for concluding that the delegation clause was procedurally and substantively unconscionable . . . also rendered the arbitration provision unconscionable." *Id*.

Our rule is consistent with the rules in the Second, Third, and Fourth Circuits. These circuits require a relatively low barrier to entry: if a party's challenge mentions and

specifically relates to the validity of the delegation provision in its opposition to the motion to compel arbitration or other pleading, the federal court has a green light to consider those arguments. *See Gingras v. Think Fin., Inc.*, 922 F.3d. 112, 126 (2d Cir. 2019) (holding that a party's argument that "[t]he delegation provision . . . is also fraudulent" was a sufficiently "specific attack on the delegation provision . . . to make the issue of arbitrability one for a federal court" (alteration in original)); *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) (requiring "at least [a] reference" to the delegation provision for a federal court to review a party's challenge); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (finding that a party's statement "that the delegation clause was unenforceable because of the prospective waiver doctrine" was sufficient "to mount a challenge to the delegation clause"). The Third and Fourth Circuits have both explicitly recognized that "a party may rely on the same arguments" to challenge the arbitration agreement and the delegation provision. *MacDonald*, 883 F.3d at 226–27 (determining that a party specifically challenged a delegation provision where it argued the delegation clause and arbitration provisions were both unenforceable because an arbitration procedure in the agreement was illusory); *see Gibbs*, 966 F.3d at 294 (concluding that a party specifically challenged a delegation provision where it argued the delegation provision and arbitration agreement were unenforceable for the same reason).

We recognize that not all circuits align with our view. The Sixth and Eleventh Circuits require litigants to provide more substance in their delegation provision challenge. In the Sixth Circuit, "a party's mere statement that it is challenging the delegation provision is not enough; courts

must look to the substance of that challenge [before intervening]." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021). There, the plaintiffs "argu[ed] that the infancy doctrine is applicable to the contract as a whole; but it is also applicable to each arbitration clause and delegation clause when viewed separately." But the Sixth Circuit found this insufficient to specifically challenge the delegation provision because "[the infancy] defense directly affects the enforceability or validity of the entire agreement." The Eleventh Circuit set forth similar conditions: a court can intervene "if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *Attix v. Carrington Mortg. Servs, LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022). There, "it [was] not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.'" *Id.* And, while the Sixth Circuit acknowledges "that a party may challenge both the entire agreement and the delegation provision under the same *legal doctrine*," a party may fail in the Sixth Circuit if "they simply recycle[] the same arguments [in challenging the delegation provision] that pertain to the enforceability of the agreement as a whole." *In re StockX*, 19 F.4th at 886. This is in line with the approach taken by the Third and Fourth Circuits, which allow challenges to proceed where a party relies on the same legal doctrine *and* the same arguments in challenging the arbitration agreement and the delegation provision. *See MacDonald*, 883 F.3d at 227; *see also Gibbs*, 966 F.3d at 294.

In sum, we hold that to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make

arguments challenging it; a court need not, as required by the Sixth and Eleventh Circuits, first evaluate the substance of the challenge. We agree with the Third and Fourth Circuits that a party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision.

Applying these principles to the present case, we conclude that Mr. Bielski specifically challenged the enforceability of the delegation provision. Mr. Bielski challenged the delegation provision at several points in the proceedings below. For example, he contended that "[t]he delegation provision is unenforceable because it is procedurally and substantively unconscionable." Similarly, he argued that the process was procedurally unconscionable because the "delegation provision [was] presented to users . . . on a take it or leave it basis, with no opportunity to opt out." He further asserted that "the delegation provision (as well as the larger agreement to arbitrate . . .) does not contain even a modicum of bilaterality, and is not just 'unfairly one-sided'—it is *completely* one sided." He also contended that "the arbitration agreement's lengthy one-sided pre-arbitration procedure" applies to the "disputes identified in the delegation provision."

Taken together, these arguments show that Mr. Bielski specifically challenged the delegation provision: he not only mentioned it, but crafted arguments directly addressing its unconscionability. That Mr. Bielski argued the arbitration agreement was unenforceable for the same reasons does not defeat his challenge. Because Mr. Bielski specifically challenged the enforceability of the delegation provision under Section 2 of the FAA, the district court correctly considered the challenge.

B.

Coinbase further challenges how the district court conducted its unconscionability analysis. Coinbase argues the district court erred when it "backtrack[ed] through the nested provisions of Coinbase's '[a]rbitration [a]greement,'" and urges us to hold that a court should "analyze a delegation [provision] based on the [provision's] own terms." Mr. Bielski argues the district court needed to consider the parts of the agreement that impacted the delegation provision to decide its enforceability. We agree with Mr. Bielski. In evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret that provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also id.* § 1650 ("Particular clauses of a contract are subordinate to its general intent."). To do otherwise would be nonsensical and contrary to our precedent. *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) (finding that "[a] party is . . . permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable.").

In *Holley-Gallegly*, we determined that *Rent-A-Center* does not confine "a party resisting arbitration . . . to the text of the delegation clause to argue that the clause is unconscionable." *Id.* If a party may refer to provisions outside the delegation provision, a court may, of course, consider those provisions in determining the validity of the delegation provision. There are two important reasons to

allow a court to look past the words of the delegation provision and to the context of the contract as a whole. First, the provision itself may not provide enough information for the court to evaluate the challenge, especially where the delegation provision incorporates defined terms. Because a court's unconscionability analysis "is highly dependent on context" and "often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision," a court must be able to consider the context of the agreement in evaluating the provision. *Sanchez v. Valencia Holding Co.,* 353 P.3d 741, 749 (Cal. 2015) (quoting Cal. Civ. Code § 1670.5(b)). Second, restricting a court's review may incentivize contract drafters to write sparse delegation provisions to evade meaningful review. Drafters could hide layers upon layers of unconscionable provisions in the arbitration agreement. For example, a contract may contain a delegation provision that simply says, "You must arbitrate questions of arbitrability." Elsewhere in the contract, however, there may be unconscionable arbitration procedures, like a large filing fee or a distant site for arbitration. These provisions could make arbitrating arbitrability unconscionable because to do so would be extremely burdensome and expensive. But if a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable. In this example, specifically challenging the delegation provision would require a party to reference the language from other parts of the contract, and the court would need to evaluate these parts of the contract to appreciate the meaning of the delegation provision. In *Holley-Gallegly,* we rejected the notion that the court is limited to a clause-bound interpretation and do so here as well. Without considering

the context of the contract, a court would be unable to consider the full meaning of the delegation provision.

Here, there is even more reason to construe the delegation provision in light of the arbitration agreement as a whole: the delegation provision expressly incorporates a defined term. The delegation provision provides:

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

These words in and of themselves do not give the court enough information to determine whether the delegation provision is unconscionable; they are devoid of meaning without context. If the provision delegates all disputes arising out of the Arbitration Agreement, how can the court not look to the Arbitration Agreement to understand the delegation provision's meaning? The Arbitration Agreement provides that "[i]f we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement . . . shall be resolved through binding arbitration, on an individual basis." In so doing, the Arbitration Agreement, too, incorporates a defined term: Formal Complaint Process.

The district court needed to look through the delegation provision to these defined terms to fully appreciate and

evaluate Mr. Bielski's argument that the procedures in the arbitration agreement "*as applied* to the delegation provision rendered *that provision* unconscionable." *Rent-A-Ctr.*, 561 U.S. at 74. Accordingly, we find the district court correctly considered the whole context surrounding the delegation provision in its analysis of the provision's validity.

## C.

Finally, considering the delegation provision in context, we evaluate whether it is unconscionable. Mr. Bielski argues it is unconscionable because it is an adhesion contract, lacks mutuality, and imposes one-sided, onerous pre-arbitration procedures on users. We disagree, and therefore reverse the district court's denial of Coinbase's motion to compel arbitration.

Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224–25 (Cal. 2012). Unconscionability "is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Sanchez*, 353 P.3d at 748 (internal quotation and citation omitted). For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of both procedural and substantive unconscionability. *Id.* Courts analyze unconscionability on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).

*i.*

Under California law, procedural unconscionability addresses contract negotiation and formation and focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle*, 282 P.3d at 1232. A court may find oppression where unequal bargaining power results in "no real negotiation and an absence of meaningful choice," *Grand Prospect Partners. v. Ross Dress for Less, Inc.*, 182 Cal. Rptr. 3d 235, 248 (Ct. App. 2015), and surprise where "the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party," *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 808 (Ct. App. 2005).

Mr. Bielski argues that the delegation provision is procedurally unconscionable because it contained elements of both oppression and surprise: oppression because the provision was presented as an adhesion contract, and surprise because the right to arbitrate is preconditioned on "onerous procedural preconditions." We agree that the delegation provision is somewhat oppressive as California courts have applied the unconscionability doctrine but disagree that it contains any element of surprise.

We have little trouble finding the delegation provision was presented as an adhesion contract because Mr. Bielski had only two options: accept the delegation provision or forgo a Coinbase account. *See Armendariz*, 6 P.3d at 689 (defining a contract of adhesion as a "standardized contract, which [is] imposed and drafted by the party of superior bargaining strength," and only gives the weaker party "the opportunity to adhere to the contract or reject it." (quoting *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781, 784 (Ct. App. 1961))). Because take-it-or-leave-it adhesion contracts

always contain "some degree of procedural unconscionability," *see Sanchez*, 353 P.3d at 751, Coinbase's delegation provision contains some level of procedural unconscionability.

We reject, however, Mr. Bielski's argument that the pre-arbitration dispute resolution process establishes surprise because the process is neither hidden nor beyond the reasonable expectation of the user. First, there is no argument that the process is hidden in the User Agreement: it is clearly presented in Section 8, titled "Customer Feedback, Queries, Complaints, and Dispute Resolution." Unlike in *OTO, L.L.C. v. Kho*, Coinbase's dispute resolution process is written in plain language and in a legible-sized font. 447 P.3d 680, 691 (Cal. 2019) (finding surprise where an agreement was "filled with statutory references and legal jargon," and "the text [was] visually impenetrable and challenge[d] the limits of legibility." (internal quotation marks omitted)). Further, the pre-arbitration dispute resolution procedures are not onerous or beyond the reasonable expectation of the user. The agreement lays out the steps a user must take if he or she has a dispute with Coinbase: a user must first try resolving any dispute with Coinbase informally, and if that fails, a user must file a formal complaint with Coinbase before initiating arbitration. Coinbase has obligations under this process too: it must acknowledge receipt of the complaint; review and evaluate it; and within fifteen business days, resolve the issue in the way requested by the user, reject the user's complaint and provide reasons why, or offer an alternative solution. Pre-arbitration dispute resolution procedures are commonplace and can be both "reasonable and laudable." *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 518 (Ct. App. 2013). We therefore do not find these procedures to be

beyond the reasonable expectations of the user.  So, while Mr. Bielski did establish some level of procedural unconscionability, we find it is low.

*ii.*

Next, we turn to substantive unconscionability, which relates "to the fairness of an agreement's actual terms." *Pinnacle*, 282 P.3d at 1232.  "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." *Lim*, 8 F.4th at 1002.

Mr. Bielski argues the delegation provision is substantively unconscionable for two reasons: (1) it lacks mutuality because only users are bound by the provision, and (2) its incorporation of the pre-arbitration dispute resolution process unfairly gives Coinbase a free peek into users' complaints.  While the district court agreed with Mr. Bielski's arguments, we do not find a level of substantive unconscionability sufficient to render the provision unenforceable.

A lack of mutuality and the presence of user-only pre-arbitration dispute resolution processes can both weigh toward finding a provision substantively unconscionable. For the purpose of this analysis, we assume but do not decide that the User Agreement requires users, but not Coinbase, to arbitrate their claims.  Because the delegation provision applies to "disputes arising out of or related to the interpretation or application of the Arbitration Agreement," if only users' disputes can arise from the arbitration agreement, the delegation provision only applies to users and lacks mutuality.

But because "the California Supreme Court has confirmed that a one-sided contract is not necessarily unconscionable," something more than the absence of mutuality is required for us to find the provision unconscionable. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030 (9th Cir. 2016). It is undisputed that only Coinbase's users must engage in the pre-arbitration dispute resolution process, giving Coinbase a "free peek" at users' potential claims without affording users that same opportunity. But we do not find these pre-arbitration procedures to be overly harsh or unfairly one-sided. Mr. Bielski relies on two cases where courts found provisions substantively unconscionable based on a lack of mutuality and unfair dispute resolution processes. *See Nyulassy v. Lockheed Martin Corp.*, 16 Cal. Rptr. 3d 296, 307–08 (Ct. App. 2004); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010) (applying California law). The provisions in those cases contained a third factor: a time restriction on the non-drafting parties' ability to bring claims against the drafting party. That restriction is missing here, and we do not find any other conditions in the delegation provision that are "overly harsh, unduly oppressive, or unfairly one-sided." *Lim*, 8 F.4th at 1002. Here, a lack of mutuality in the delegation provision, combined with the pre-arbitration dispute resolution process establishes, at most, a low level of substantive unconscionability.

Ultimately, we hold that the delegation provision's low levels of procedural and substantive unconscionability fail to tip the scales to render the provision unconscionable and therefore unenforceable. Therefore, the district court erred in refusing to enforce the delegation provision.

IV.

Accordingly, we reverse the district court's order denying Coinbase's motion to compel arbitration.

**REVERSED**.

---

MILLER, Circuit Judge, concurring in part and concurring in the judgment:

I join the court's opinion with the exception of part III(A). I agree with much of that part, including the court's holding that "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it" and that "a party may use the same arguments to challenge both the delegation provision and the arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." I do not join it, however, because I do not agree with the court's characterization of the rule applied in other courts of appeals.

According to the court, our decision today contributes to a circuit conflict because, although several circuits agree with our approach, "[t]he Sixth and Eleventh Circuits require litigants to provide more substance in their delegation provision challenge." The cited cases do not support that description.

In *In re StockX Customer Data Security Breach Litigation*, the Sixth Circuit held that "a party's mere statement that it is challenging the delegation provision is not enough." 19 F.4th 873, 885 (6th Cir. 2021). Similarly, the Eleventh Circuit held in *Attix v. Carrington Mortgage*

*Services, LLC*, that a party challenging a delegation provision must do more than "merely say the words, 'I am challenging the delegation agreement.'" 35 F.4th 1284, 1304 (11th Cir. 2022). I do not think anyone disagrees. I, at least, do not read our decision today to mean that merely stating, "I am challenging the delegation agreement," would be sufficient. To the contrary, the court's opinion makes clear that "the party resisting arbitration must specifically reference the delegation provision *and* make arguments challenging it." (emphasis added).

It is true that both the Sixth and the Eleventh Circuits say that "courts must look to the substance of the challenge." *StockX*, 19 F.4th at 885; *see Attix* 35 F.4th at 1304 ("[T]he substantive nature of the party's challenge [must] meaningfully go[] to the parties' precise agreement to delegate threshold arbitrability issues."). But nothing in either circuit's case law suggests that looking at "substance" differs meaningfully from what we have prescribed: assessing whether parties "specifically . . . ma[de] arguments challenging [the delegation provision]." *See StockX*, 19 F.4th at 885 ("[P]laintiffs were required to show that '*the basis of [their] challenge* [is] directed specifically' to the 'delegation provision.'" (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010))); *Attix*, 35 F.4th at 1304 ("Further, before deciding a challenge to the validity or enforceability of a delegation agreement, we should ensure that the challenge asserted *really is* about the delegation agreement.").

Ultimately, our description of the law of the Sixth and Eleventh Circuits matters less than our articulation of the law of this circuit. But the opinion's discussion of out-of-circuit law should not mislead readers into thinking that our rule is more permissive than it actually is.