NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 15 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OSTERHAUS PHARMACY, INC.; CAMMACK'S PHARMACIES, INC., doing business as Jims Pharmacy and Home Health; JCH PHARMACY HOLDINGS, INC.; CALLS COMMUNITY PHARMACY, LLC, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs - Appellants,<br><br>   v.<br><br>CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, LLC, formerly known as Caremark RX, Inc.; CAREMARK, LLC; CAREMARKPCS, LLC; CAREMARKPCS HEALTH, LLC; CAREMARK IPA, LLC; CAREMARK PART D SERVICES, LLC; AETNA INC.; AETNA HEALTH HOLDINGS, LLC; AETNA HEALTH MANAGEMENT, LLC,<br><br>            Defendants - Appellees. | No. 25-1467<br><br>D.C. No.<br>2:24-cv-01539-JJT<br><br>MEMORANDUM[*] |
| OSTERHAUS PHARMACY, INC.; CAMMACK'S PHARMACIES, INC.; JCH PHARMACY HOLDINGS, INC.; CALLS | No. 25-1843 |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| COMMUNITY PHARMACY, LLC,<br><br>Plaintiffs - Appellees,<br><br>v.<br><br>CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, LLC; CAREMARK, LLC; CAREMARKPCS, LLC; CAREMARKPCS HEALTH, LLC; CAREMARK IPA, LLC; CAREMARK PART D SERVICES, LLC; AETNA INC.; AETNA HEALTH HOLDINGS, LLC; AETNA HEALTH MANAGEMENT, LLC,<br><br>Defendants - Appellants. | D.C. No.<br>2:24-cv-01539-JJT |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted March 3, 2026
Phoenix, Arizona

Before: CLIFTON, BYBEE, and MILLER, Circuit Judges.

Appellants Osterhaus Pharmacy, Inc., Cammack's Pharmacies, Inc., JCH Pharmacy Holdings, Inc., and Calls Community Pharmacy, LLC (collectively, "Plaintiffs") appeal the district court's order compelling arbitration of Plaintiffs' claims against Caremark and its affiliates (collectively, "Caremark") and dismissing the action without prejudice (Case No. 25-1467). Plaintiffs allege anticompetitive conduct by pharmacy benefit managers regarding prescriptions filled by pharmacies under Medicare health plans. Caremark cross-appeals the

district court's order declining to enforce the delegation clause of the arbitration agreement (Case No. 25-1843).

Caremark filed a motion to compel arbitration of Plaintiffs' claims based on an arbitration agreement within Caremark's standard provider agreement. Plaintiffs opposed the motion on the grounds that certain provisions rendered the arbitration agreement substantively unconscionable and thereby unenforceable: (1) the fee-shifting provision, (2) the unilateral modification provision, (3) the uneven remedies provision, (4) the escrow provision, (5) the confidentiality provision, and (6) the limitations provision. Having concluded that the court, instead of an arbitrator, should decide the threshold issue of arbitrability (the subject of the cross-appeal), the district court then considered whether the arbitration agreement was unenforceable as applied to Plaintiffs' claims. The district court held the uneven remedies provision, escrow provision, and confidentiality provision to be substantively unconscionable. The court concluded that the three unconscionable provisions were severable, and that the other challenged provisions and the agreement as a whole, absent those three severed provisions, were not unconscionable. The district court granted Caremark's motion and dismissed the case without prejudice[1].

---

[1] We note the Supreme Court's recent decision holding that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's decision to grant or deny a motion to compel arbitration. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000 (9th Cir. 2023). We review a district court's decision to sever unconscionable provisions for abuse of discretion. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1088 (9th Cir. 2024). We affirm.

1.  Under Arizona law, the "primary" determinant of whether provisions of a contract are severable is "the contractual language." *Kahl v. Winfrey*, 303 P.2d 526, 529 (Ariz. 1956). "If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part." *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986). The arbitration agreement here expressly stated that any unenforceable provisions shall be deemed severable. Therefore, the district court did not abuse its discretion in looking to the contractual language to sever the unconscionable provisions and enforce the remainder of the arbitration agreement.

---

the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). However, where defendants have not requested a stay and instead have affirmatively requested a dismissal, as is the case here, dismissal is appropriate. Further, while Plaintiffs requested a stay before the district court, they abandoned that request on appeal. Therefore, this court affirms the dismissal of Plaintiffs' claims without prejudice.

25-1467

2. Plaintiffs contend the district court erred on multiple grounds in enforcing the arbitration agreement, including because the arbitration fees would exceed the "normal costs of litigation" and be prohibitively costly.

Caremark contends that we should decline to consider this challenge on appeal because Plaintiffs failed to raise this argument to the district court. The argument made by Plaintiffs before the district court appears to have been presented in the context of their challenge to the escrow provision, which required a party initiating an arbitration to place in escrow at the outset a sum sufficient to cover the estimated attorney's fees and other arbitration expenses, in no event totaling less than $50,000. We observe that there is some ambiguity as to whether this argument was limited to Plaintiffs' challenge to the escrow provision, or established a challenge to the total cost of arbitration. Assuming that Plaintiffs have done enough to preserve their argument, we nevertheless conclude that Plaintiffs have not shown that the overall cost of arbitration is itself unconscionable.

Under Arizona law, a plaintiff bears the burden of establishing that the fees and costs to arbitrate are so excessive as to "deny a potential litigant the opportunity to vindicate his or her rights." *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1055 (Ariz. Ct. App. 2005). When a party seeks to invalidate an agreement on this ground, Arizona courts will consider several factors:

> [A] party seeking to invalidate an arbitration agreement must establish arbitration costs with reasonable certainty; costs cannot be speculative. Next, the party must make a specific, individualized showing that she would be financially unable to bear the costs of arbitration. Lastly, the court considers whether the agreement permits a party to waive or reduce arbitration costs because of financial hardship.

*Rizzio v. Surpass Senior Living LLC*, 492 P.3d 1031, 1035 (Ariz. 2021) (internal citations omitted).

Plaintiffs have not met their burden. The mere fact that fees must be paid "above and beyond the normal costs of litigation" does not render the arbitration agreement per se unconscionable. If that were the case, courts would be hard-pressed ever to compel arbitration. Arbitration is a process with expenses that have to be borne, including compensation to the arbitrators and administrative costs, while court litigation does not require payments to the court beyond filing fees. Parties necessarily accept this reality when they enter into an arbitration agreement. Asserting that the additional cost of arbitration renders an arbitration agreement unconscionable would undermine the agreement of the parties and the federal presumption in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . .").

Arizona's *Rizzio* factors also militate against a holding of unconscionability where Plaintiffs are unable to establish arbitration costs with reasonable certainty.

25-1467

*Rizzio*, 492 P.3d at 1035. Here, the arbitration agreement includes a "loser pays" provision requiring that the expenses of arbitration be paid by the party that loses in arbitration. As Caremark has argued, Plaintiffs "will not be required to pay *any* arbitration fees if they prevail." "[I]t may well be that the existence of large arbitration costs could preclude a litigant such from effectively vindicating her federal statutory rights in the arbitral forum," but the "risk that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–91 (2000). Plaintiffs' assertion that they risk being subject to costs and fees, if they lose their dispute, is exactly the type of "risk" that the *Randolph* Court deemed speculative and conclusory at best. *See id.*

3. Plaintiffs contend that the district court erred in holding that the loser pays provision was not unconscionable. This argument fails. Though not universal, requirements that unsuccessful parties in litigation are required to bear the costs of litigation, including the attorney's fees of successful litigants, are far from atypical in American law, by contract or statute. Under Arizona law, for example, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Ariz. Rev. Stat. § 12-341.01(A). Five of Plaintiffs' seven claims appear to fall within Arizona's fee-shifting statute. While Plaintiffs' two claims for Medicare and antitrust violations may not fall

within the scope of § 12-341.01, Plaintiffs have not met their burden of establishing that the loser pays provision prevents them from effectively vindicating their rights in the arbitral forum. If costs of arbitration are imposed upon Plaintiffs because they did not prevail in the arbitration, that suggests that they did not have rights that needed vindication.

4. Plaintiffs argue that the district court erred in upholding a provision shortening the limitations period for antitrust claims from four years to two years. Because Arizona courts have recognized similar agreements with shortened limitations periods and Plaintiffs have again failed to explain how this provision prevents them from effectively vindicating their rights in the arbitral forum, we affirm the district court's order. *See e.g.*, *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1032 (Ariz. Ct. App. 1992) (upholding a provision shortening the limitations period from six years to eighteen months).

5. Plaintiffs contend that the district court erred in upholding an amendment provision that they argue allows Caremark to unilaterally amend its contracts at any time. We disagree. We have recognized unconscionability in provisions that allow providers to change their terms without notice and to apply those changes retroactively. *Cf. Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682 (9th Cir. 2024) (applying California law). This is not the case here. Caremark agreed to provide advance notice of forthcoming amendments, specify the date that these

amendments would become effective, and give other parties, including Plaintiffs, the opportunity to discontinue the agreement. Because of these distinctions, we affirm the district court's holding that Caremark's amendment provision is not per se unconscionable.

6. Plaintiffs contend that the district court erred in concluding that a showing of "gross disparity in economic leverage" had no bearing on the enforceability of the arbitration agreement so long as Plaintiffs were not prevented from understanding the terms of the arbitration agreement. We disagree. Plaintiffs' challenge is relevant to the question of procedural unconscionability. "Procedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Clark v. Renaissance West, L.L.C.*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) (quotation marks and citation omitted). Plaintiffs do not dispute that they had an opportunity to review the arbitration agreement and entered into the agreement with Caremark with an understanding of the terms. The disparity in bargaining power alone does not justify rendering the arbitration clause unenforceable, absent any showing of unfair surprise, mistake, ignorance, or other indicators of procedural unconscionability in the bargaining process.

7. On cross-appeal, Caremark contends that the district court erred in declining to enforce the delegation clause, which required an arbitrator to determine the gateway issue of arbitrability.

First, Caremark contends that the district court erred in considering this issue on the merits because Plaintiffs failed to mount a specific challenge to the delegation clause. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) ("[A] party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration."). Contrary to Caremark's assertion, we agree with the district court that Plaintiffs specifically attacked the validity of the delegation clause throughout their briefing to the district court. Plaintiffs argued that the delegation clause was unconscionable for the same reasons that the arbitration agreement was, and our court permits "a party [to] challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable," which Plaintiffs did here. *Id.* at 1009–10.

Turning to the merits, the district court did not err in declining to enforce the delegation clause, where the clause was substantively unconscionable when read in conjunction with the escrow provision discussed above. *See Holley-Gallegly*, 74 F.4th at 1002 (permitting a party "to challenge the enforceability of a delegation

clause by explaining how 'unrelated' provisions make the delegation unconscionable"). The escrow provision would require Plaintiffs to set aside an enormous upfront sum, potentially in the millions, to initiate a claim or even to determine if the delegation clause required the initial challenge to be considered by an arbitral tribunal instead of by the court. Caremark responded to that argument before the district court by citing the minimum $50,000 amount, without quarreling with Plaintiffs' much larger calculation. The district court reasonably concluded that the delegation clause, read alongside the escrow provision, would prevent Plaintiffs from "effectively vindicat[ing] [their] rights in the arbitral forum due to the prohibitive costs of arbitration." *Rizzio*, 492 P.3d at 1035. We see no reason to disagree with or disturb the district court's order.

Each party to bear its own costs.

**AFFIRMED**.