**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITE HERE LOCAL 30, *Plaintiff-Appellee*, | No. 21-55017 |
| v. | D.C. No. 3:20-cv-01006-W-DEB |
| SYCUAN BAND OF THE KUMEYAAY NATION, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted January 10, 2022
Pasadena, California

Filed May 20, 2022

Before: A. WALLACE TASHIMA, MILAN D. SMITH,
JR., and PAUL J. WATFORD, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Labor Law / Arbitration / Indian Gaming Regulatory Act

The panel affirmed the district court's judgment on the pleadings in favor of labor union Unite Here Local 30 and the district court's dismissal of a counterclaim brought by the Sycuan Band of the Kumeyaay Nation, a federally recognized Indian tribe.

The union brought suit to compel arbitration of its allegation that Sycuan violated the labor provisions of the parties' contract respecting the operation of a casino. Sycuan opposed arbitration principally because it believed that federal labor law preempted its contract with the State of California that had required it to enter into the contract with Unite Here. In its counterclaim, Sycuan sought a declaratory judgment that federal law preempted the labor organizing provisions of its contract with California, a gaming compact governed by the Indian Gaming Regulatory Act. These provisions required Sycuan to adopt and maintain a Tribal Labor Relations Ordinance (TLRO), which set forth the parties' agreement about specific labor rights for casino employees and included an arbitration provision. Unite Here alleged that Sycuan violated the TLRO by refusing the union's demands regarding its intention to organize the casino employees.

The panel held that the district court had original jurisdiction over Unite Here's claims pursuant to 28 U.S.C.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1331 and 29 U.S.C. § 185.  The panel held that the district court had supplemental, but not original, jurisdiction over Sycuan's counterclaim because the Declaratory Judgment Act does not confer jurisdiction, and § 301 of the Labor Management Relations Act could not confer federal question jurisdiction because Sycuan's challenge was to the agreement between Sycuan and the State of California, rather than to a contract between an employer and a labor organization. The panel held that the district court did not abuse its discretion in declining to exercise its supplemental jurisdiction because adjudicating the counterclaim in federal court would interfere with the arbitrator's authority.  The panel concluded that the district court was correct that the arbitrator should decide issues of contract validity, and the counterclaim rested on an issue of contract validity. Accordingly, the district court's declining to exercise supplemental jurisdiction served economy, convenience, and fairness.  Further, as argued by the State of California in its amicus brief, Sycuan did not give the State notice before filing the counterclaim, as required by the gaming compact, and the State was not a party to this suit seeking to invalidate the compact.

Addressing contract formation, the panel held that Unite Here and Sycuan formed an agreement to arbitrate because, in the TLRA, Sycuan promised California that if any union made certain promises to the tribe, Sycuan would automatically enter into a bilateral contract with that union adopting the TLRO's terms.  The panel concluded that Unite Here made such promises, and a contract was formed, because the TLRO was essentially an open-ended offer to any union to enter into a bilateral contract.

With respect to the validity of the contract between United Here and Sycuan, the panel declined to address

Sycuan's argument that there was no enforceable promise to arbitrate because the National Labor Relations Act preempted the TLRO. The panel held that the preemption argument challenged the contract as a whole and therefore was a question for the arbitrator to decide. Rejecting Sycuan's argument that arbitrating NLRA preemption would infringe on its tribal sovereign immunity, the panel concluded that in the TLRO there was an express waiver of sovereign immunity from suit for the purpose of compelling arbitration.

---

## COUNSEL

Steven G. Biddle (argued), Van Allyn Goodwin, and Warsame Y. Hassan, Littler Mendelson P.C., San Diego, California, for Defendant-Appellant.

Kristin L. Martin (argued), McCracken Stemerman & Holsberry LLP, San Francisco, California, for Plaintiff-Appellee.

Rob Bonta, Attorney General; Sara J. Drake, Senior Assistant Attorney General; William P. Torngren, Supervising Deputy Attorney General; Paras Hrishikesh Midha, Deputy Attorney General; Office of the Attorney General, Sacramento, California; for Amicus Curiae State of California.

## OPINION

M. SMITH, Circuit Judge:

Appellant the Sycuan Band of the Kumeyaay Nation (Sycuan or Tribe), a federally recognized Indian tribe, seeks the reversal of the district court's order granting labor union, Unite Here Local 30's (Unite Here), motion for judgment on the pleadings with respect to its own complaint and motion to dismiss Sycuan's counterclaim for declaratory relief. Unite Here alleges that Sycuan violated the labor provisions of a contract between the two parties respecting the operation of a casino. The union brought suit to compel arbitration of that dispute pursuant to an arbitration clause contained in the contract. Sycuan opposes arbitration principally because the Tribe believes that federal labor law preempts its contract with the State of California that had required Sycuan to enter into the contract with Unite Here. In a counterclaim, Sycuan seeks a declaratory judgment that federal law preempts the labor organizing provisions of the agreement with California. We affirm the district court.

## BACKGROUND

The Sycuan Casino Resort is located on the Tribe's reservation, and revenue from the operation of the casino provides funding for tribal governmental services and programs for the benefit of the Tribe. Under the rules of the federal Indian Gaming Regulatory Act (IGRA), tribes can only operate high-stakes casino games (known as Class III games) if they sign a gaming compact with the surrounding state, and that compact is approved by the Secretary of the Interior. 25 U.S.C. § 2710(d)(1), (3)(B). Tribal-state compacts may address "subjects that are directly related to the operation of gaming activities," 25 U.S.C. § 2710(d)(3)(C)(vii), including labor relations. *Coyote*

*Valley Band of Pomo Indians v. California (In re Indian Gaming Related Cases)*, 331 F.3d 1094, 1115–16 (9th Cir. 2003).

The State of California and Sycuan entered into a compact in 2015 (Compact). Part of the Compact specified that Sycuan must adopt and maintain a Tribal Labor Relations Ordinance (TLRO), which was included in an appendix as a material part of the Compact. The TLRO sets forth the parties' agreement about specific labor rights for casino employees and allows labor unions to organize those employees. The TLRO also established procedures for organizing employees into unions. Section 13 of the TLRO provides for arbitration as the dispute resolution procedure for all issues arising under the TLRO. In Section 13(e), Sycuan waived its sovereign immunity against suits brought in state or federal court seeking to compel arbitration.

Section 7 of the TLRO is at issue in this appeal. In that section, Sycuan agreed "that if a union first offers in writing that it and its local affiliates will comply with [certain provisions of the TLRO] the Tribe shall comply with [other provisions]." Included in those provisions is a promise to "resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13." The TLRO further provides that a union making these promises "shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract between the Tribe and the union, and the Tribe agrees to accept such offer."

In November 2019, Unite Here made such an offer in a letter to Sycuan's top elected officer indicating the union's intention to organize Sycuan's casino employees. Unite Here then made demands of Sycuan in keeping with the terms of the TLRO, but arguably in excess of the rights and

obligations provided for in the National Labor Relations Act (NLRA). Sycuan refused Unite Here's demands. Unite Here sought to begin arbitration proceedings against Sycuan regarding these alleged TLRO violations, but Sycuan informed the American Arbitration Association that it would not participate in the arbitration. Sycuan stated that it believed that portions of the TLRO, including the arbitration provision and delegation clause, were not valid because the agreement is preempted by the NLRA.

Unite Here filed a complaint in the United States District Court for the Southern District of California alleging that Sycuan violated the Compact's TLRO and asking the court to compel arbitration in accordance with the TLRO's dispute resolution provisions. Unite Here first contended that pursuant to TLRO Section 7, Sycuan entered into a contract with them when Sycuan received Unite Here's offer letter. Unite Here alleged that Sycuan breached their contract by: (1) not giving Unite Here a list of employees' names and contact information, (2) telling employees that it opposes their unionizing, (3) not allowing Unite Here's representative to enter the casino, and (4) not facilitating the dissemination of information from Unite Here to employees. Sycuan filed an answer asserting: (a) the NLRA preempts the TLRO, (b) there is no binding bilateral agreement between Unite Here and Sycuan, (c) parts of the TLRO are unenforceable because the terms are not sufficiently definite, and (d) Sycuan did not waive its sovereign immunity with respect to Unite Here or NLRA preemption. Sycuan also filed a counterclaim for declaratory relief claiming that: (1) the NLRA preempts portions of the TLRO, so the dispute between Sycuan and Unite Here is not arbitrable; and (2) Sycuan may still assert its sovereign immunity.

Unite Here filed a motion to dismiss the counterclaim asking the court to decline supplemental jurisdiction over the counterclaim for prudential reasons and a motion for judgment on the pleadings to compel Sycuan to participate in arbitration. Sycuan opposed both motions arguing, among other things, that: (1) Sycuan and Unite Here did not mutually and voluntarily enter into an agreement to arbitrate the dispute at issue; (2) the contract between Sycuan and Unite Here is unenforceable because it lacks sufficiently definite terms and constitutes an "agreement to agree;" and (3) Sycuan did not waive its sovereign immunity to suit with respect to Unite Here or the claims alleged.

The district court granted Unite Here's motion for judgment on the pleadings and dismissed Sycuan's counterclaim. The district court also concluded that there is a bilateral contract between Sycuan and Unite Here in which both agreed to comply with the arbitration provision of the TLRO, and that the remaining disputes must be decided by the arbitrator.

## ANALYSIS

### I.  Standard of Review

A district court must grant a motion for judgment on the pleadings when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). We review the granting of such a motion de novo. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). We also

review an order compelling arbitration de novo. *SEIU Loc. 121RN v. Los Robles Reg'l Med. Ctr.*, 976 F.3d 849, 852 (9th Cir. 2020). Disputes about contract formation are a question of law, unless the parties contest material facts. *United States v. Mujahid*, 799 F.3d 1228, 1237–38 (9th Cir. 2015). We review for abuse of discretion a district court's decision to exercise or not exercise supplemental jurisdiction. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

## II. Jurisdiction

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court had original jurisdiction over Unite Here's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185.

The district court correctly concluded that it had supplemental, but not original, jurisdiction over Sycuan's counterclaim, and did not abuse its discretion in declining to exercise that jurisdiction. District courts have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In its counterclaim, Sycuan seeks a declaratory judgment that the NLRA preempts inconsistent portions of the TLRO. The legal and factual issues in Unite Here's claims and Sycuan's counterclaim are sufficiently similar that the district court did have supplemental jurisdiction because they form a part of the same case or controversy concerning the meaning and effect of the TLRO.

Sycuan argues, however, that the district court abused its discretion in declining to exercise supplemental jurisdiction over Sycuan's counterclaim. Courts can decline to exercise supplemental jurisdiction for compelling reasons, 28 U.S.C.

§ 1367(c)(4), in line with the principles of economy, convenience, fairness, and comity. *See Arroyo v. Rosas*, 19 F.4th 1202, 1205 (9th Cir. 2021). The district court in this case declined supplemental jurisdiction here because adjudicating the counterclaim in federal court "would interfere with the arbitrator's authority." Citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006), the district court concluded that the primary issue in the counterclaim was the contract's validity, which should be considered by the arbitrator, not the court. Because the district court was correct that the arbitrator should decide issues of contract validity, as discussed below, and the counterclaim rests on an issue of contract validity, the district court's declining to exercise supplemental jurisdiction served economy, convenience, and fairness. The district court did not abuse its discretion in declining to exercise supplemental jurisdiction.

The State of California (State), in its amicus brief, also agrees that the district court appropriately declined to exercise supplemental jurisdiction because Sycuan failed to follow the Compact's dispute resolution process. The State says that, according to the terms of the Compact, Sycuan was required to give California notice and then attempt to resolve the issue through the Compact's dispute resolution process before filing the counterclaim, which it did not. The State also takes issue with Sycuan's litigating Compact interpretation in a case where the State is not a party and argues that it must be a party to a suit seeking to invalidate any material term to the Compact. We agree with the State and conclude that its arguments were also compelling reasons for the district court not to exercise supplemental jurisdiction.

In the alternative, Sycuan argues that the district court had original, federal question jurisdiction over its counterclaim. Federal question jurisdiction covers cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088–89 (9th Cir. 2002) (alteration in original) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 8–9 (1983)). Sycuan argues its counterclaim arises under federal law because its declaratory judgment claim concerns the preemptive effect of a federal statute, the NLRA.

Sycuan is incorrect; the district court did not have original jurisdiction over the counterclaim. The Declaratory Judgment Act is a procedural device only and requires a separate independent basis for jurisdiction. 28 U.S.C. § 2201(a); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Sycuan contends there is an independent basis for jurisdiction because the claim for a declaratory judgment arises out of a controversy about the application of the NLRA. However, under the well-pleaded complaint rule the federal question must be present on the face of a properly pleaded complaint and a "defense is not part of a [claimant]'s properly pleaded statement of his or her claim." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). For declaratory judgments, "courts apply the well-pleaded complaint rule to the impending or threatened action, rather than the complaint seeking declaratory relief." *Stillaguamish Tribe of Indians v. Washington*, 913 F.3d 1116, 1118 (9th Cir. 2019); *see also Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1274 (9th Cir. 1982). Here,

that impending or threatened action is Unite Here's claim for an order compelling arbitration. Although styled as a counterclaim for declaratory relief, Sycuan raises preemption as a defense to Unite Here's claim. Under these circumstances, federal question jurisdiction cannot arise from such a defense.

Further, the subject matter jurisdiction for Unite Here's claim to compel arbitration rests on Section 301(a) of the Labor Management Relations Act, which gives subject matter jurisdiction to federal courts "for violation[s] of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). There is jurisdiction over the claim for an order compelling arbitration because Unite Here alleges that Sycuan (the employer) violated a contract with Unite Here (a labor organization). But Section 301 cannot give original jurisdiction over the counterclaim challenging the TLRO's validity because the challenge is to the agreement between Sycuan and the State of California, not a contract between an employer and a labor organization. There is no federal question jurisdiction for the declaratory relief counterclaim.

### III. Formation of the Contract between Unite Here and Sycuan

Sycuan contends that the district court cannot compel arbitration because there was no agreement between the parties to arbitrate. This is a question of contract formation and courts generally decide whether the parties formed a contract before compelling arbitration. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

The parties do not dispute the material facts about the formation of the contract. As part of the Compact with California, Sycuan agreed to adopt and maintain the TLRO.

In the TLRO, Sycuan promised California that if any union made certain promises contained in Section 7(b) of the TLRO to the Tribe, Sycuan would automatically enter into a bilateral contract with that union adopting the TLRO's terms.  Unite Here sent Sycuan a letter in November 2019, notifying the Tribe of its intent to organize and promising to comply with Section 7(b) of the TLRO.  According to the promises Sycuan made to California, upon the receipt of this letter, a contract was immediately formed between Unite Here and Sycuan.

Normally, "an ordinance . . . does not amount to an offer since it merely evidences the municipal corporation's intent to do something in the future, but does not thereby make a promise that it shall be done."  1 Williston on Contracts § 4:9 (4th ed.).  But if the ordinance is thereby communicated to another, "in such a way as to lead that other to believe that no further assent by the communicator is necessary, it may become an offer."  *Id*.  Here, when Sycuan promised California that it would adopt and maintain the TLRO, Sycuan communicated to the union that no further assent was necessary.  The TLRO is essentially an open-ended offer to any union to enter into a bilateral contract.  When Unite Here sent the November 2019 letter and made promises to Sycuan, Unite Here accepted Sycuan's offer.  As consideration for the contract, Unite Here made the promises contained in Section 7(b)—i.e., promises not to disparage the Tribe, attempt to influence the outcome of tribal elections, engage in economic disruption at the casino or strike-related picketing on tribal lands.  When Sycuan received the November 2019 letter, an enforceable contract was formed.

Sycuan claims that it never formed a contract with Unite Here because the TLRO is an unenforceable agreement to

agree because the TLRO's terms are not sufficiently definite. However, the terms of the contract were definitively established in the TLRO without any further negotiation between the union and the Tribe. Section 7(d) leaves little ambiguity. By its terms, any union's Section 7(b) promises constitute an offer to accept all of the TLRO's terms as a bilateral contract and Sycuan was bound to accept this offer. The terms were definite, there was nothing left to negotiate, and a contract was formed.

## IV.     Validity of the Contract between Unite Here and Sycuan

Sycuan argues that the district court erred because its answer and counterclaim raise a valid affirmative defense of preemption. Sycuan contends that if the NLRA preempts the TLRO, there is no enforceable promise to arbitrate. Sycuan is mistaken.

A defense that a law invalidates a contract with an arbitration provision is an issue for the arbitrator to decide. *Buckeye Check Cashing, Inc.*, 546 U.S. at 444–46; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397, 402–04 (1967). In *Buckeye Check Cashing*, the Supreme Court distinguished between a "challenge[] specifically [to] the validity of the agreement to arbitrate" and a "challenge[] [to] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 444. A court should decide only challenges to "the arbitration clause itself." *Id.* at 445–46. Challenges to "the contract's validity [are] considered by the arbitrator in the first instance." *Id*. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) reaffirmed this rule.

Sycuan's preemption argument is a challenge to the contract as a whole, not the arbitration clause. Sycuan says, "the Complaint is barred because the purported Tribal Labor Relations Ordinance, including any arbitration provisions contained therein, are preempted by the National Labor Relations Act, 29 U.S.C. § 151, et seq., and, therefore, is unenforceable where such provisions conflict with the NLRA." Sycuan does not argue that the arbitration clause itself is invalid. Rather, Sycuan challenges the contract as a whole and so the preemption argument is for the arbitrator to decide. *See Buckeye Check Cashing*, 546 U.S. at 445–46.

Sycuan also argues that, if a contact does exist, the issue of NLRA preemption is outside the scope of the arbitration provisions of the TLRO. We can decide this issue because generally "courts will decide which issues are arbitrable." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). The TLRO states that "[a]ll issues shall be resolved exclusively through the binding dispute resolution mechanisms herein." Sycuan argues that "all issues" means all issues arising under the TLRO, and the TLRO does not mention the NLRA, preemption, or conflicts of law. Preemption is not excluded from the arbitration agreement. The arbitration agreement does not, and need not, cover only specifically identified disputes, *Buckeye Check Cashing, Inc.*, 546 U.S. at 443–44, and federal courts apply a presumption in favor of arbitrability, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960). The arbitration clause here is broad and covers "[a]ll issues" under the contract. Preemption as a defense to an alleged breach is an issue covered by the contract.

Sycuan also argues that arbitrating NLRA preemption infringes on its sovereign immunity, which it claims it has not waived. "[A] waiver of [tribal] sovereign immunity

'cannot be implied but must be unequivocally expressed.'" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Sycuan admits that it waived immunity for disputes "arising under" the TLRO.  Sycuan denies, however, waiving sovereign immunity "with respect to the issue of NLRA preemption" because such a waiver was not clear and unequivocal.  Sycuan also contends that NLRA preemption is a threshold issue that the district court should consider before sending the underlying claims to arbitration because if the NLRA preempts the TLRO then the waiver of sovereign immunity may also be preempted and arbitrating sovereign immunity is contrary to the principles of sovereign immunity.

Here, there was an express waiver of tribal sovereign immunity as Sycuan agreed in Section 13(e) of the Compact's TLRO to waive its immunity from suit for the purpose of compelling arbitration.  Further, when a tribe agrees to judicial enforcement of an arbitration agreement it waives its immunity concerning that agreement. *See C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418–20 (2001).  Sycuan cites no law supporting its argument that the arbitration agreement must expressly list all issues to which the Tribe waives sovereign immunity.  There is no sovereign immunity to arbitration because a party is only obligated to arbitrate when that party agreed to arbitrate, as Sycuan did here.

Because the validity of the contract and the issue of preemption are for the arbitrator to decide, we do not examine the arguments or express a view on them here.

## CONCLUSION

We affirm the district court's granting of Unite Here's motion for judgment on the pleadings and motion to dismiss Sycuan's counterclaim.

**AFFIRMED.**