**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FLI-LO FALCON, LLC; STEEL CITY EAGLES CORP.; STELVIO TRANSPORT, LLC, *Plaintiffs-Appellants*, | No.22-35818 |
| | D.C. No. 2:22-cv-00441-RSM-MLP |
| v. | |
| AMAZON.COM, INC.; AMAZON LOGISTICS, INC., *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted August 24, 2023
Portland, Oregon

Filed April 10, 2024

Before: Mark J. Bennett, Lawrence VanDyke, and Holly A. Thomas, Circuit Judges.

Opinion by Judge Bennett;
Concurrence by Judge H.A. Thomas

# SUMMARY[*]

## Federal Arbitration Act

The panel affirmed the district court's order granting Amazon's motion to compel arbitration and dismissing without prejudice a case arising from a dispute between Amazon and the delivery service partners (DSP) with whom it contracts to provide local delivery services.

Plaintiffs are or were business entities who entered into Delivery Service Program Agreements ("DSP Agreements") with Amazon that contained an arbitration provision ("Arbitration Agreement"), providing that disputes arising from DSP Agreements would be resolved by binding arbitration conducted by the American Arbitration Association ("AAA") rather than in court.

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts evidencing a transaction involving commerce. Section I of the FAA, the "transportation worker exemption," exempts from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

The panel held that Section I's transportation worker exemption did not extend to business entities or to commercial contracts like the DSP Agreement. No business entity is similar in nature to the actual human

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

workers enumerated by the text of the transportation worker exemption, and Section I's residual clause referring to "any other class of workers" did not extend to business entities like plaintiffs.

The panel rejected plaintiffs' argument that even if they were not eligible for Section I's transportation worker exemption, the Arbitration Agreement should not be enforced against them because it is unconscionable. The Arbitration Agreement contained a Delegation Provision, which incorporated AAA rules delegating threshold issues to the arbitrator. The panel assumed, without deciding, that plaintiffs sufficiently challenged the Delegation Provision itself as unconscionable, and that plaintiffs' assertion that they lacked business sophistication was relevant. The panel nevertheless rejected plaintiffs' unconscionability challenge because plaintiffs failed to create a dispute of material fact regarding their sophistication. The panel concluded that the Delegation Provision was between sophisticated parties, incorporated the AAA rules, and therefore must be enforced. Thus, plaintiffs' remaining unconscionability arguments directed at the Arbitration Agreement as a whole must be decided by the arbitrator.

Concurring in part and concurring in the judgment, Judge H.A. Thomas agreed with the majority that (1) plaintiffs are not eligible for the FAA's transportation worker exemption, and (2) plaintiffs' challenge to their arbitration agreements' delegation clauses was foreclosed because the record revealed no dispute of material fact regarding whether plaintiffs were "sophisticated" entities. She would not go as far as the majority in holding that business entities can never be subject to the transportation worker exemption because it is unnecessary to reach the question whether there are any circumstances

under which a business entity could qualify for the transportation worker exemption.

## COUNSEL

Andrew M. McNeela (argued) and Daniel Hume, Kirby McInerney LLP, New York, New York; Roger M. Townsend, Breskin Johnson & Townsend PLLC, New York, New York; for Plaintiffs-Appellants.

Brian D. Buckley (argued), Fenwick & West LLP, Seattle, Washington; Sofia Ritala, Claire E. Mena, and Justin A. Stacy, Fenwick & West LLP, San Francisco, California; Janie Y. Miller, Fenwick & West LLP, Santa Monica, California; for Defendants-Appellees.

## OPINION

BENNETT, Circuit Judge:

This case arises from a dispute between Amazon and the delivery service partners ("DSPs") with whom it contracts to provide local delivery services. Three DSPs filed a federal class-action complaint on behalf of all current and former DSPs seeking damages and declaratory and injunctive relief.

Each DSP must execute a DSP Program Agreement ("DSP Agreement") with Amazon. The DSP Agreement contains an arbitration provision ("Arbitration Agreement"), which, among other things, states that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER

THAN IN COURT."    Relying on the Arbitration Agreement, Amazon moved to compel arbitration in response to the class-action complaint.   The district court adopted the magistrate judge's report and recommendation ("R & R") in full, granted Amazon's motion to compel arbitration, and dismissed the case without prejudice.    We have jurisdiction under 28 U.S.C. § 1291, and we **AFFIRM**.

## I.    FACTUAL BACKGROUND

Plaintiffs are Fli-Lo Falcon, LLC ("Falcon"), Steel City Eagles, Corp. ("Steel City"), and Stelvio Transport LLC ("Stelvio").    Falcon is a North Carolina single-member LLC operating in Wyoming.   Steel City is a Pennsylvania business corporation.   Stelvio is wholly owned by STEO Group Inc.   Defendants are Amazon.com Inc. and Amazon Logistics, Inc. (collectively, "Amazon").

Plaintiffs are or were Amazon DSPs.[1]    To join the DSP program, an individual needs to first "[c]reate [a] business entity."    The created business entity would then execute the DSP Agreement with Amazon Logistics, Inc.,[2] which requires the DSP to represent and confirm that it "is a legal entity duly formed or incorporated, validly existing, and in good standing in its jurisdiction of formation or

---

[1]  On March 31, 2021, Amazon's DSP Agreement with Falcon expired, and Amazon chose not to renew it.   On April 12, 2022, Amazon terminated its DSP Agreement with Steel City.   Stelvio is still a DSP for Amazon.

[2]  Plaintiffs explain that they cite the 2018 version of the agreement "[b]ecause there are no material differences between the versions of the DSP Agreement as they relate to the issues raised by this appeal." Because we agree, we also refer to the 2018 version.

incorporation." Plaintiffs each hired multiple individuals to deliver packages to Amazon's customers.

The Arbitration Agreement, part of the DSP Agreement, provides:

> Governing Law; Submission to Arbitration. This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules. ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT. . . . The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration, and arbitrator fees will be governed by the AAA's rules.

The Arbitration Agreement just quoted contains what courts refer to as a Delegation Provision, which in turn incorporates the "AAA rules": "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT. . . . The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules."

## II.    PROCEDURAL HISTORY

The magistrate judge's R & R first determined that the parties entered into valid agreements to arbitrate under the Federal Arbitration Act ("FAA").    The magistrate judge then concluded that Section 1 of the FAA—which exempts from its coverage "contracts of employment of seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1—does not apply to "commercial agreement[s] between business entities for the delivery of goods."    Finally, the magistrate judge found that, by expressly incorporating the AAA rules into the Arbitration Agreement, the parties had clearly and unmistakably delegated all questions of arbitrability to the arbitrator.    Plaintiffs objected to the R & R, but the district court adopted it in full, compelled arbitration, and dismissed this case without prejudice. [3] This appeal followed.    We have jurisdiction under 28 U.S.C. § 1291.

## III.  STANDARD OF REVIEW & LEGAL STANDARD

We review de novo a district court order compelling arbitration.    *Unite Here Loc. 30 v. Sycuan Band of the*

---

[3] Plaintiffs objected to the magistrate judge's recommendation that the district court grant the motion to compel arbitration but did not contend that the magistrate judge incorrectly recommended dismissal without prejudice rather than a stay pending arbitration.    On appeal, plaintiffs have not challenged the district court's decision to dismiss the case rather than stay it.    We note, however, that the Supreme Court recently granted certiorari in *Smith v. Spizzirri*, No. 22-1218, 2024 WL 133822, at *1 (U.S. Jan. 12, 2024), in which the question presented is: "Whether Section 3 of the FAA requires district courts to stay a lawsuit pending arbitration, or whether district courts have discretion to dismiss when all claims are subject to arbitration."    Petition for a Writ of Certiorari, *Spizzirri*, 2024 WL 133822 (No. 22-1218), 2023 WL 4108513, at *i.

*Kumeyaay Nation*, 35 F.4th 695, 700–01 (9th Cir. 2022). We review for clear error any underlying factual findings. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

The FAA governs arbitration agreements in "contract[s] evidencing a transaction involving commerce."   9 U.S.C. § 2.   The Act provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).   If an agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that [it] *shall* direct the parties to proceed to arbitration."   *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

If a party ignores its agreement to arbitrate, the other party may ask a court to issue "an order directing that such arbitration proceed in the manner provided for in such agreement."   9 U.S.C. § 4.   The FAA "requires the court to enforce the arbitration agreement in accordance with its terms" and limits the court's role to deciding whether: (1) "a valid agreement to arbitrate exists" between the parties and (2) the scope of the agreement encompasses the claims. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The presence of a delegation clause further limits the issues that a court may decide."   *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). When the parties have "clearly and unmistakably" delegated questions regarding arbitrability to the arbitrator, the court

need not conduct further inquiries beyond the existence of the arbitration agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "Under *Rent-A-Center*, . . . a valid—*i.e.*, enforceable—delegation clause commits to the arbitrator nearly all challenges to an arbitration provision." *Caremark*, 43 F.4th at 1029 (footnote omitted). These challenges include the threshold inquiries: "whether the agreement covers a particular controversy" and "whether the arbitration provision is enforceable at all." *Id.*

## IV.   DISCUSSION

### A.   Section 1 of the FAA does not extend to corporate entities or to commercial contracts.

Enacted by Congress in 1925, the FAA was a response to American courts' refusals to enforce arbitration agreements. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995). "To give effect to this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Section 2 of the FAA, which we note above uses the "involving commerce" language, "was enacted pursuant to Congress' substantive power to regulate interstate commerce and admiralty." *Id.* at 112.

While § 2 concerns the FAA's "basic coverage authorization," § 1 concerns the "exemption from [the FAA's] coverage." *Id.* Section 1 of the FAA, sometimes known as the "transportation worker exemption," *see, e.g.*, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 907 (9th Cir. 2020), exempts from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other

class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1. As the party opposing arbitration, plaintiffs bear the burden of establishing that the exemption applies. *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008).

In *Circuit City*, the Supreme Court explained that "the wording of [the transportation worker exemption] calls for the application of the maxim *ejusdem generis*," which is "the statutory canon that 'where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" 532 U.S. at 114–15 (brackets omitted) (quoting 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991)). Therefore, "the residual clause ['any other class of workers' in § 1] should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* at 115. Following this canon, the Court held that the transportation worker exemption is to "be afforded a narrow construction." *Id.* at 118.

In *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019), the Court also analyzed the FAA by examining the meanings of statutory terms and the historical context in 1925 when the FAA was enacted. *See id.* at 539–40. This led the *New Prime* Court to conclude that the residual category of "any other class of workers" encompassed independent contractors, *id.* at 541, because in 1925, all work was treated as employment "whether or not the common law criteria for a master-servant relationship happened to be satisfied," *id.* at 540. The Court also relied on the fact that Congress did not use words like "employees" or "servants," which would

have been more "natural choices" if the transportation worker exemption were meant to exclude independent contractors. *Id.* at 541.

But neither *Circuit City* nor *New Prime* answered the questions presented here. First, can business entities like plaintiffs qualify as a "class of worker" engaged in foreign or interstate commerce?**[4]** And second, can a commercial contract between two business entities qualify as a "contract of employment"? *Circuit City* answered affirmatively whether "Section 1 exempts from the FAA *only* contracts of employment of transportation workers." 532 U.S. at 119 (emphasis added). And *New Prime*, while asking whether "'contracts of employment' refer[s] only to contracts between employers and employees," limited the inquiry to whether the term *also* extends to "contracts with independent contractors." *Id.* at 536.**[5]**

Although the Supreme Court has not addressed the exact questions here, it has provided us with significant guidance. "Statutory interpretation, as we always say, begins with the text . . . ." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The text of the transportation worker exemption makes clear—and we hold—that the residual clause does not extend to

---

[4] Plaintiffs argue that several decades-old, out-of-circuit cases have held that the transportation worker exemption covers contracts involving labor unions, which as plaintiffs correctly note, "are not natural persons." We are not called on to decide any issues involving labor unions as a contracting party, and we do not do so in this opinion.

[5] Indeed, as the First Circuit noted before the Court's grant of certiorari, "because the parties do not dispute that [plaintiff] is a transportation worker under § 1, [it] need not address whether an LLC or other corporate entity can itself qualify as a transportation worker." *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017), *aff'd*, 139 S. Ct. 532 (2019).

business entities like plaintiffs.   The phrase "any other class of workers" *follows* "seamen" and "railroad employees."   9 U.S.C. § 1.   And the word "seamen" and the phrase "railroad employees" describe natural persons who are individual workers.   As a *residual* category, "any other class of *workers*"—which is to "be afforded a narrow construction," *Circuit City*, 532 U.S. at 118 (emphasis added)—cannot do the heavy lifting of expanding the transportation worker exemption to cover non-natural persons like the business entities that are the plaintiffs. After all, the *ejusdem generis* maxim dictates that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects *similar in nature to* those objects enumerated by the preceding specific words."   *Id.* at 114–15 (emphasis added) (citations omitted).   We agree with the Fourth Circuit's decision in an almost identical case also involving Amazon DSPs that "[s]izable corporate entities are not 'similar in nature' to the *actual human workers* enumerated by the text of the 'transportation worker' exemption." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596–97 (4th Cir. 2023) (emphasis added); *see also Tillman Transp., LLC v. MI Bus. Inc.*, No. 23-1777, 2024 WL 1153970, at *4–6 (6th Cir. Mar. 18, 2024) (citing *Amos* with approval and holding that "[§] 1's exemption did not apply to limited liability companies like Tillman Transportation," *id.* at *6). Following that clear, and in our view clearly required, logic, we hold that no business entity is similar in nature to the actual human workers enumerated by the text of the transportation worker exemption. While a natural person such as an independent contractor may be a transportation worker, a nonnatural person such as a business entity that employs or contracts with transportation workers, is not and

cannot be a transportation worker.    Nor is such a nonnatural person "similar in nature" to a transportation worker.

Our interpretation also aligns with the Supreme Court's view of the reasons for Congress's adoption of the transportation worker exemption, as discussed by the Supreme Court in *Circuit City*.    Before 1925, Congress had provided for the arbitration of disputes between seamen and their employers under the Shipping Commissioners Act of 1872.    *Circuit City*, 532 U.S. at 121.    And when Congress passed the FAA, "the passage of a more comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent."    *Id.* (citing the Railway Labor Act of 1926, 44 Stat. 577, 46 U.S.C. § 651 (repealed)).    Thus, the Court found that "[i]t [wa]s reasonable to assume that Congress excluded '*seamen*' and 'railroad *employees*' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering *specific workers*."    *Id.* (emphasis added).    This supports that Congress's transportation workers exemption was targeted at employment contracts of workers (whether employees or independent contractors), *not* contracts of business entities.

Indeed, in *Southwest Airlines Co. v. Saxon*, the Court, discussing and applying *Circuit City*, stated that:

> [C]anons [of statutory construction] showed that § 1 exempted *only contracts with transportation workers*, rather than all employees, from the FAA.    And, while we did not provide a complete definition of "transportation *worker*," we indicated that *any such worker* must at least play a direct

and "necessary role in the free flow of goods" across borders.

596 U.S. 450, 458 (2022) (emphasis added) (citations omitted).

To repeat, no plaintiff is a transportation worker. Plaintiffs claim that "the DSPs—including all their personnel—performed transportation work covered by the [transportation worker exemption]." But plaintiffs' own description—"including all their personnel"—belies their argument. A Falcon *employee* may be a transportation worker playing a direct and necessary role in the free flow of goods across borders. But that cannot turn Falcon into such a transportation worker.

We also relatedly hold that "contracts of employment" in the transportation worker exemption do not extend to commercial contracts like the DSP Agreements. Recall that § 1 of the FAA exempts "contracts of employment *of . . .* any other *class of workers* engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added). In other words, for a contract to *be* a contract of employment covered by § 1, it must have a *qualifying worker* as one of the parties. The Supreme Court instructed similarly in *New Prime*, when it stated that the transportation worker exemption's use of the phrase "contracts of employment" is intended to "capture any contract for the performance of *work* by *workers.*" 139 S. Ct. at 541. In contrast, the DSP Agreement between DSPs and Amazon calls for the "transportation, delivery, and related services . . . performed by the business entity that [plaintiffs] represent." The DSP Agreement even states that DSPs have "exclusive responsibility for [their] Personnel, including exclusive control over compensation, hours, and working conditions."

Like at the district court, plaintiffs have provided no authority that the transportation worker exemption can apply to a commercial contract between two business entities. And several district courts, with which we agree, have held that it does not. *See, e.g.*, *R&C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC,* 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020) ("The Agreement here is a commercial contract between two business entities. It cannot reasonably be construed as a contract of employment governing 'work by workers.'"); *ShaZor Logistics v. Amazon.com, LLC*, 628 F. Supp. 3d 708, 712 (E.D. Mich. 2022) ("Section 1 is inapplicable to contracts between businesses, because businesses do not sign employment contracts with one another. Moreover, the contract here [between another DSP and Amazon] only contemplated a business-to-business relationship." (citations omitted)); *D.V.C. Trucking, Inc. v. RMX Glob. Logistics, Inc*., No. Civ. A. 05-cv-00705, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (declining to apply the transportation worker exemption because plaintiff was not "an employed 'transportation worker' engaged in interstate commerce, but rather . . . a business corporation").

Plaintiffs seek to avoid this conclusion. But their reliance, for example, on *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), and *Romero v. Watkins & Shepard Trucking, Inc.*, 9 F.4th 1097 (9th Cir. 2021), is misplaced. In *Rittmann*, the question presented was whether contracts between *individual drivers*, who contracted directly with Amazon to provide local package delivery through Amazon's Flex ("AMFlex") program, were exempted from the FAA by the transportation worker exemption. 971 F.3d at 907. The court simply held that AmFlex drivers were "engaged in interstate commerce for § 1's purposes," even when transporting goods "wholly within a state," because

that last-mile delivery was still a "part of a continuous interstate transportation." *Id.* at 916. *Rittmann* says nothing about whether a business entity can be a "worker" subject to a "contract of employment" under the transportation worker exemption.

Plaintiffs claim that Amazon is circumventing *Rittman*'s holding by requiring them to become business entities to become DSPs. In *Rittman*, we did reject Amazon's argument that parties could "contract around the FAA's transportation worker exemption." *Id.* at 919. But we did so in the context of addressing Amazon's argument that even if "AmFlex workers are exempt from the FAA's coverage provisions," the court could "nevertheless enforce the arbitration provision" under federal and state law. *Id.* We distinguished the cases Amazon cited there, because we found those cases "involve[d] arbitration agreements to which the FAA applies." *Id.* As relevant here, Amazon chose to contract only with business entities. Nothing in any law cited to us barred Amazon from doing so. And those contracts are not subject to the transportation worker exemption. *Rittman* is not to the contrary.

Plaintiffs also claim *Romero* somehow bars Amazon's invocation of arbitration. In *Romero*, plaintiff Alejandro Romero agreed, on an online portal, to the "Arbitration Policy" at issue, which contained a clause "waiv[ing] the application or enforcement of any provision of the FAA which would otherwise exclude [the Arbitration Policy] from its coverage." 9 F.4th at 1100. The *Romero* panel held that the Arbitration Policy's attempted waiver of § 1 was unenforceable because "the FAA affords courts the power to enforce arbitration agreements, but not when they involve *transportation workers* engaged in interstate commerce pursuant to § 1. Section 1 acts as a limit on the

court's power and, thus, cannot be waived." *Id.* (emphasis added).[6] *Id.* *Romero* essentially held that the FAA's text trumped the private contract at issue. Nothing in the case suggests (much less holds) that the transportation worker exemption applies to contracts in which a natural person "transportation worker" (like Mr. Romero) is not a party. Nor do any cases hold that contracting parties are forbidden by the FAA to structure their contracts to avoid the transportation worker exemption by taking those contracts out of the coverage of the exemption. If there is a problem here, it is for Congress to fix, such as by extending the exemption to apply to contracts between business entities. But we lack the authority to remedy such a problem, if it indeed even is one.

Finally, plaintiffs argue that the DSP Agreements are not commercial agreements between business entities because plaintiffs are "not 'independent' business[es], but are utterly dominated by Amazon, and all the DSPs' personnel are functionally Amazon employees." This argument is better viewed as one about whether plaintiffs—even though business entities—are still a qualifying "class of worker" under the transportation worker exemption because of the services they provide Amazon. But they are not, as the transportation worker exemption does not extend to business entities like plaintiffs. Whether independent or not, plaintiffs are still business entities and not natural persons.

---

[6] The *Romero* panel also relied on *New Prime*, as do we: "The Supreme Court noted that § 1 says that nothing herein—meaning nothing in the FAA—may be used to compel arbitration in disputes involving the *contracts of employment of certain transportation workers . . . .*" *Romero*, 9 F.4th at 1100 (emphasis added) (internal quotation marks omitted) (quoting *New Prime*, 139 S. Ct. at 536).

## B. Plaintiffs' unconscionability challenges to the Arbitration Agreement fall within the scope of the enforceable Delegation Clause.

Plaintiffs next argue that even if they are not eligible for the transportation worker exemption, the Arbitration Agreement should not be enforced against them because it is unconscionable.

As mentioned above, the Arbitration Agreement contains a Delegation Provision, which incorporates the "AAA rules":

> The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879.

Rule 7(a) of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R-7(a) (Sept. 1, 2022).

Arbitration clauses may delegate to the arbitrator, for determination in the arbitration, certain threshold issues about the agreement. These delegation provisions are simply "agreement[s] to arbitrate threshold issues

concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. Such arbitrable threshold issues may include "whether the parties have agreed to arbitrate," or "whether [the arbitration] agreement covers a particular controversy," *id.* at 69, including the controversy of "whether the [arbitration] [a]greement is unconscionable," *id.* at 68. When the parties' agreement to delegate threshold arbitrability questions to the arbitrator is "clear and unmistakable," then a court "may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), we held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* at 1130. And, when that is the case, "the only remaining question is whether the particular agreement to *delegate* arbitrability—the [d]elegation [p]rovision—is itself unconscionable." *Id.* at 1132. Relying on *Rent-A-Center*, 561 U.S. at 73–75, we held that, because "[plaintiff] failed to make any arguments specific to the delegation provision and instead argued that the [a]rbitration [c]lause as a whole is unconscionable under state law," we may not "consider that claim because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." *Brennan*, 796 F.3d at 1133 (cleaned up).

Thus, we must first decide the threshold issue of whether plaintiffs here have "ma[d]e any arguments specific to" the Delegation Provision, *id.*, and if so, whether the Delegation Provision is enforceable. The magistrate judge's R & R answered no to the first threshold issue. The R & R noted that, "[f]or this [c]ourt to hear [p]laintiffs' challenges, [p]laintiffs' arguments would need to have explicitly

challenged the [D]elegation [P]rovision in the Agreement itself—that is, the power to the arbitrator to determine the validity of the [A]rbitration [Agreement] as unconscionable or its provision of the AAA rules—and not various aspects of the [A]rbitration [Agreement] or [DSP] Agreement." Instead, "[p]laintiffs' unconscionability challenges raise issues as to the whole of the [A]rbitration [Agreement] in the [DSP] Agreement, and at times, to the entirety of the parties' [DSP] Agreement itself."

Recently (and more than one year after the district court compelled arbitration), we considered in *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023), "what a party must do to specifically challenge a delegation provision to ensure that a court can review its challenge." We held that, "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Id.* at 1011. We rejected the notion that "a court need . . . first evaluate the substance of the challenge." *Id.* Instead, "a party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." *Id.*

The district court did not have the benefit of *Bielski*'s guidance. We find that considering *Bielski*, the threshold issue of whether plaintiffs sufficiently challenged the Delegation Provision is a close question. On the one hand, plaintiffs did "specifically reference the [D]elegation [P]rovision and make arguments challenging it." *Id.* For example, in plaintiffs' opposition to the R & R, they argued that "[p]utting aside the wisdom of the Ninth Circuit's determination that the *mere* incorporation of AAA rules, depending on the circumstances, can constitute 'clear and

unmistakable evidence that the contracting parties agreed to arbitrate arbitrability,' that rule does not apply where, as here, the party opposing arbitration *is not sophisticated*." (citation omitted) (emphasis added).   In plaintiffs' opening brief, they further developed their arguments challenging the Delegation Provision.   They referred to Amazon's DSP program marketing materials and the fact that "Amazon . . . negotiated numerous ancillary agreements on the DSPs' behalf" to show *plaintiffs' lack of business sophistication*.

On the other hand, plaintiffs made no such sophistication-based challenge to the Delegation Provision in their opposition to Amazon's motion to compel. *Compare id.* at 1009 ("[A] party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration."), *with id.* at 1010 (citing out-of-circuit cases with approval, which held that "if a party's challenge mentions and specifically relates to the validity of the delegation provision in its opposition to the motion to compel arbitration *or other pleading*, the federal court has a green light to consider those arguments" (emphasis added)).   Even when we take all of plaintiffs' pleadings into consideration, plaintiffs have not stated explicitly that they believe that the Delegation Provision itself (as opposed to the Arbitration Agreement or the DSP Agreement as a whole) is unconscionable.

Today, we assume, without deciding, that plaintiffs sufficiently challenged that the Delegation Provision itself is unconscionable.   We also assume, without deciding, that plaintiffs' "sophistication" is relevant to our unconscionability inquiry.   Even so assuming, we reject plaintiffs' unconscionability challenge to the Delegation Provision because their arguments are solely based on their

supposed lack of sophistication and they have pointed to nothing in the record creating a dispute of material fact regarding their "sophistication." *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (holding that motions to compel arbitration are subject to the summary judgment standard).

Some courts that have looked at sophistication in this or a related context have focused on factors such as whether the plaintiff is a consumer as opposed to a corporation, *see, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016), whether the plaintiff "had legal training or experience dealing with complicated contracts," *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015), and the length and complexity of the agreement, *see, e.g.*, *id.* (involving a 60-page complex document with a "myriad of legal terms"). Without adopting those factors, or even finding them relevant, nothing in plaintiffs' declarations suggest, for example, that they are first-time business owners or otherwise unfamiliar with commercial contracts, such as the short, six-page DSP Agreement here that contains the one-paragraph Delegation Provision. To the contrary, the plaintiffs' declarations submitted with their oppositions to Amazon's motion to compel arbitration show that plaintiffs are sophisticated businesses entities. The record also shows that plaintiffs exercised independence in structuring and conducting their businesses. Some have complex corporate structures. Some view themselves as "a transportation and logistics company, which entered into a contract to deliver packages for [Amazon]." Each plaintiff was sophisticated enough to hire multiple individuals and asserted significant control over those individuals. And while plaintiffs "received weekly routes from" Amazon to

deliver packages to Amazon's customers, they also "recruit[ed], interview[ed], train[ed], supervis[ed], and monitor[ed] drivers to ensure that the deliveries were timely made." This is not a case with unsophisticated consumers entering into extensive agreements where their lack of sophistication impacts their ability to discern their contractual obligations. Rather, this is a case involving business entities, which were sophisticated enough to navigate state laws around incorporation and company formation, hire many individuals, and perform complex duties to ensure timely delivery of large numbers of packages. In short, because plaintiffs rest their Delegation Provision unconscionability argument solely on their supposed lack of sophistication, and because the undisputed evidence does not support their sophistication claim, we reject their challenge to the Delegation Provision.

Because we have rejected plaintiffs' only challenge to the Delegation Provision, and in doing so have found that plaintiffs are sophisticated, we must enforce the Delegation Provision under *Brennan*. *Brennan*, 796 F.3d at 1130–31 (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" between sophisticated parties). Thus, plaintiffs' remaining unconscionability challenges to the Arbitration Agreement fall within the scope of the enforceable Delegation Provision, and we leave them to the arbitrator in the first instance.

## V.   CONCLUSION

Section 1 of the FAA—the transportation worker exemption—does not extend to business entities or to commercial contracts. Even assuming without deciding that plaintiffs sufficiently challenged the Delegation

Provision and that their sophistication is relevant, their challenge fails because they have failed to create a dispute of material fact regarding their sophistication. And because the Delegation Provision is between sophisticated parties and incorporates the AAA rules, we must enforce it. Thus, plaintiffs' remaining unconscionability arguments directed at the Arbitration Agreement as a whole must be decided by the arbitrator.

**AFFIRMED**.

H.A. THOMAS, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority that plaintiffs are not eligible for the Federal Arbitration Act's (FAA) transportation worker exemption. I also agree that, because the record reveals no dispute of material fact regarding whether plaintiffs are "sophisticated" entities, our decision in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), forecloses plaintiffs' challenge to their arbitration agreements' delegation clauses. I write separately, however, because I would not go as far as the majority in holding that business entities can never be subject to the transportation worker exemption.

The majority opinion breaks plaintiffs' argument down into two questions: first, whether a business entity can "qualify as a 'class of worker' engaged in foreign or interstate commerce;" and second, whether "a commercial contract between two business entities" can "qualify as a 'contract of employment.'" Majority Op. at 11. I agree with the majority that the answer to the second question is "no."

The Supreme Court has held that the FAA uses the term "contracts of employment" to refer to "contract[s] for the performance of *work* by *workers*." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 541 (2019). As the majority explains, the contracts at issue here do not match this description. Majority Op. at 14. They are not employment contracts, but commercial contracts for delivery and transportation services, provided by companies that themselves employ and manage multiple workers.

This finding is sufficient to reject plaintiffs' argument. It is therefore unnecessary to reach the question whether there are any circumstances under which a business entity could qualify for the transportation worker exemption. Plaintiffs express concern that answering this question in the negative would allow companies to contract around the FAA's exemption by forcing their transportation workers to create sham corporations, then contracting with those corporations rather than employing the workers directly. The majority rejects plaintiffs' concern, leaving the issue for Congress to resolve. Majority Op. at 17. But our sister circuits have not gone so far. *See, e.g.*, *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 597 (4th Cir. 2023) (finding that the plaintiff corporation did not qualify for the transportation worker exemption in part because it was "not some legal fiction existing only to shield Amazon from unwanted liabilities"); *Tillman Transp., LLC v. MI Bus. Inc.*, --- F.4th ---, 2024 WL 1153970, at *5 (6th Cir. Mar. 18, 2024) (quoting this same language). Nor would I. It is enough to say that plaintiffs' hypothetical is not this case: Plaintiffs are not sham corporations, but bona fide business entities, and their relationship with Amazon is not an employment relationship, but a commercial one.